L. H. Powers, doing business as L. H. Powers Company and Bituminous Casualty Corporation *v.* Thomas C. Beasley and Mrs. Thomas C. Beasley.

*(Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

Claude Callicott and Clayton W. Speer, both of Nashville, for plaintiffs in error.

Earl A. McNabb, of Nashville, for defendants in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Thomas C. Beasley, fifty-two years of age suffered a heart attack in the course of his employment by L. H. Powers. He was never able to return to work prior to a second attack approximately six months later.

On the issues made the Trial Judge found (1) that the first attack arose out of, as well as in the course of, Beasley's employment, and (2) that the employer, Powers, had actual notice thereof, and (3) that the first attack "at least substantially contributed to" his death from the second attack to which he succumbed in an hour or so. Accordingly, judgment for compensation under the Workmen's Compensation Act was awarded the widow for herself and their dependent minor daughter.

The employer and his insurance carrier have appealed, and here insist that there is no material evidence to sustain the trial judge on any of these findings.

Mr. Beasley was a carpenter. On the morning in question he was apparently in good health, and suffering from no ailment when he left home to go to his place of employment. Nor had he previously suffered any ailment. He had worked steadily for this employer for several years.

Immediately preceding the first attack Mr. Beasley had been engaged for approximately two hours with five other workmen in carrying for a distance of between 40 and 50 feet poles which weighed between 250 and 300 pounds. The day "was pretty hot". The work was referred to in the testimony of the employer or his foreman as "heavy"; hence, the number of men engaged in the immediate task mentioned.

As these poles reached their destination, these workmen directed their efforts toward putting them in an erect and stationary position as a part of the barn they were building. While the second pole was being so erected, Beasley complained of "hurting a little bit", but participated in the carrying of the third pole. As that third pole was being put in place with Beasley holding one of the guy lines to steady it, the pain became progressively more severe. In the course of minutes, he was carried to a clinic in Franklin where it was ascertained that he had suffered a severe heart attack.

Aside from the fact that the circumstances under which this attack occurred permits an inference that it arose out of Mr. Beasley's employment, there is the testimony of Dr. Adams, a heart specialist who attended Beasley, that, in his opinion, the lifting of these poles "was the most likely cause of the onset". Thus the trial judge's finding on this point is conclusive here.

The foreman, Mr. Hooper, was on the job with Beasley at all times that morning up to the happening of Mr. Beasley's sudden illness. He was informed that day that this illness was a severe heart attack. Either that night or the next morning he conveyed all this information to Mr. Powers, the employer. In addition, Powers had on the first night following this attack visited Mr. Beasley at the hospital. His insistence, however, is that

he did not receive the notice contemplated by the workmen's compensation statute because neither Mr. Beasley, nor any one for him, said to Mr. Powers that this first heart attack arose out of his employment.

Powers had actual notice of every fact in the possession of Beasley, including the fact that this heart attack suddenly came on while Beasley, an apparently healthy man, was engaged in work termed "heavy" on a day described as "hot". For Beasley to have suggested to Powers that this attack was brought on, or contributed to, by the work he was doing at the time of its onset would be to suggest no more than the facts, per se, would reasonably have suggested to Powers.

To hold that this technical defect, if it be a defect, as to the actual knowledge possessed by Mr. Powers amounts to a failure to give the notice required by the statute would hardly be in keeping with the requirement that the statute be equitably construed to the end that its purpose may be attained. Code, Section 6901. Moreover, such defect, if it be such, could not possibly have prejudiced employer, Powers. Hence, the statute does not permit him to take advantage of such supposed defect. Code, Section 6873.

As heretofore noted approximately six months after the first heart attack there occurred the second, and Mr. Beasley died within an hour or so. The trial judge found that "Mr. Beasley's death was the result of, or was at least substantially contributed to by his first heart attack". The insistence of Powers and his insurer is that this finding is not supported by any material evidence.

Immediately following the first attack on August 10, 1953, Mr. Beasley was detained in a Nashville hospital for about two weeks under the care of Dr. Adams, the aforesaid heart specialist. He was then sent home to

undergo complete quiet and rest with proper dietary supervision of an actual duration in the usual case of from six to twelve months. It was during such period of convalescence that Mr. Beasley, who had followed directions, died on February 27, 1954, following the second attack. He had remained under the care of Dr. Adams during this period.

Dr. Adams testified that the electrocardiograph of Mr. Beasley's heart taken on February 5, 1954, showed "a complete recovery from his infarction" and "did not even show his old injury", but that a previous infarction "is not always manifested on subsequent electrocardiographs". When asked whether the second attack was "independent of" the first, Dr. Adams' reply was "that would be my impression, Sir, because of the duration between the two". That "clinically" Mr. Beasley "had recovered from his first heart attack" and that "apparently" an "independent heart attack caused his death". He said that there is no way of knowing whether the second attack would have occurred if he had never had the first. Again, in answer to the question as to whether there was any connection between the first and second attack he said that he could not say whether the first attack was either a direct cause or a contributing cause to the second attack, but that "it may be a contributing factor", meaning only, as we understand his testimony as a whole, that the first attack *could* be a contributing factor to the second.

Dr. Adams also testified that a heart attack as severe as the first attack upon Mr. Beasley leaves the heart "with some impairment of function", and that when the second attack came on "the first one certainly didn't help the situation any. It made his heart more damaged than it previously was". And that "all I can say is this, that

if you already have a damaged heart to put it simply, and if you further damage the heart by another insult, that heart would be less likely to recover in the event of another attack''.

There is nothing in the testimony of Dr. Adams to the effect that the first attack, in his opinion, contributed to the bringing on of the second attack. But his testimony clearly is that this first attack so impaired Mr. Beasley's heart as to make it less capable of withstanding the second attack. Hence, there is substantial evidence in this record to support the finding of the trial judge that ''Mr. Beasley's death— was at least substantially contributed to by his first heart attack''. That being so, this court is not permitted to disturb that finding.

Affirmed with costs.