Cas Walker's Cash Stores, Inc.

*v.*

Martha Livesay.

385 S.W.2d 745.

(*Knoxville,* September Term, 1964.)

Opinion filed January 6, 1965.

Robert R. Campbell, Knoxville, C. Frank Davis, Morristown, for Cas Walker's Cash Stores, Inc.

James K. Miller, Morristown, for Martha Livesay.

Mr. Justice Dyer delivered the opinion of the Court.

This is a Workmen's Compensation case. The employer-appellant, Cas Walker's Cash Stores, Inc., appeals from an award by the trial judge to the petitioner-appellee, Martha Livesay, who sued as the dependent widow of the deceased employee, Everett Livesay.

The deceased was employed by Cas Walker's Stores as the produce manager in their Morristown store. In this capacity he was required to take items of produce from the customers, weigh, mark and return the items to the customer. Also he was required to replenish the stock in the store, from the cooler in the rear, which required the lifting of boxes and crates of produce.

The 27th day of July 1963 was a Saturday accompanied by the hot temperatures normal for a July day. On this day deceased went to work at 8:00 A.M. and during the morning performed his usual and normal duties. He left the store at noon to return home for lunch and after eating his lunch mowed a small section of his yard with a power mower. After mowing the yard deceased and petitioner (wife) sat on the front porch for a few minutes and about 12:45 P.M. deceased left home to return to work. The lay testimony to this point is that deceased acted and appeared normal portraying no signs of illness.

Upon returning to the store after lunch deceased was observed to be pale and sweating. He worked the scales for 10 or 20 minutes and after requesting relief went to the rear of the store to lie down. Deceased rested for a short time and then went home. While resting in the rear of the store he was observed by the manager to be very sick.

Deceased was examined twice on this Saturday afternoon by Dr. James Richardson. Upon this first examination deceased complained of upset stomach for a few days and after lunch on this day complained of getting sick and vomiting. The diagnosis at this time was an upset stomach for which deceased was given medicine and told to return if he did not improve. Deceased did not improve and later on in the afternoon he was again examined by Dr. Richardson. Upon this second examination Dr. Richardson found deceased looked entirely different and a cardiogram revealed deceased was suffering a heart attack. This attack was severe and some 36 hours later on 29 July 1963 deceased died. Dr. Richardson testified the cause of death was, ''a myocardial infarction, or coronary thrombosis or heart attack.'' The parties stipulated this was the cause of death.

The Trial Judge found as follows:

''On Friday and Saturday of each week, the amount of work increased greatly, and the deceased was under heavy stress and strain in keeping his work done. On Saturday, July 27, 1963, and for some four to five days prior thereto, the deceased had complained of his stomach hurting him. * * *

''The Court finds, and holds that the only reasonable inference from all the circumstances and the testimony

of both, lay and expert witnesses in the case, and the liberal construction given the act, that the deceased Livesay, on July 27th, 1963, and for some time prior thereto, was suffering from a heart condition; diseased coronary arteries; that the strain on his heart and the arteries leading thereto, from the physical exertion involved in his work at the defendant's store, in lifting and weighing produce, etc., aggravated his diseased heart condition and accelerated his death; that his death under these circumstances is attributable to an accidental injury arising in and growing out of his employment.''

There is one assignment of error as follows:

''The Court erred in finding that there was material evidence of the requisite causal connection between the employment of the petitioner's deceased by the defendant and his subsequent death by heart attack, and, hence, the Court erred in finding that there was material evidence to support a judgment for the petitioner.''

■ Counsel for both the employer and petitioner, in support of their respective positions, cite the recent case of *Ward v. Commercial Insurance Company*, 213 Tenn. 100, 372 S.W.2d 292 (1963) written for the Court by Mr. Justice White. The statements made in that case are very pertinent to the matters now under consideration and in this opinion we will make reference to this case as the Ward case. As shown in the Ward case the question of causal connection is a question of fact and our examination of this record is for the sole purpose of determining if there is material evidence to support the finding of the Chancellor on this point.

The medical evidence in this record is by the testimony of three doctors. Their testimony supports the finding of the Chancellor deceased had for sometime suffered a heart condition, that is diseased coronary arteries: Such a person is described by one of the medical witnesses as a "borderline case" and any slight exertion might set off a fatal attack. One of the medical witnesses testified such a person could have the fatal attack while resting in bed which infers time itself is a hazard to such a person.

The medical testimony on the critical point at issue is deceased's employment "could have" or "might have" contributed to precipitating the fatal heart attack. The medical testimony also supports the proposition the activities engaged in by deceased during the noon hour "could have" or "might have" contributed to precipitating the fatal heart attack. Counsel for the employer argues the medical testimony supports with greater certainty the noon hour activities of deceased precipitated the fatal attack rather than the employment activities. In the Ward case there is a statement from 2 Larsen, Workmen's Compensation 322-323 discussing language often chosen by expert medical witnesses. In our examination of this medical testimony we are of the opinion the choice of words used by the doctors which make these "subtle graduations" on the point of causal connection are contained as much in the questions as in the answers and this is particularly true of hypothetical questions.

The Ward case refers to the following quotes from *Coleman v. Coker*, 204 Tenn. 310, 321 S.W.2d 540:

"(T)his court '* * * is committed to the proposition of law that an employee who dies in the course of his

employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by ordinary exertion and usual strain of the work.'

\* \* \* \* \* \*

" '(I)f the physical activity and exertion of an employee's work aggravates a pre-existing heart condition, precipitates the fatal heart attack, and thus hastens his death, such death is the result of accident arising out of and in the course of the employment within the meaning of our Workmen's Compensation Law. *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 260 S.W.2d 182; *Heron v. Girdley,* 198 Tenn. 110, 277 S.W.2d 402; *Cambria Coal Co. v. Ault,* 166 Tenn. 567, 64 S.W.2d 18; *Lucey Boiler & Mfg. Corp. v. Hicks,* 188 Tenn. 700, 222 S.W.2d 19.' "

The Ward case also refers to the following quote from *Lynch v. LaRue,* 198 Tenn. 101, 278 S.W.2d 85 (1954) said:

" '(A)n award cannot be predicated solely upon the testimony of medical experts who are not willing to go any further than to say that it "is possible" or "could be" that there is a causal connection between the accident and the injury for which compensation is sought. However, such testimony is not entirely without value if there be other evidence from which the trial judge may reasonably infer that the injury did result from the accident that the experts say "could be" the cause of the injury.' 198 Tenn. at 104, 278 S.W.2d at 86."

We have expert medical evidence deceased's employment "could or Might" have contributed to precipitating

the injury (fatal heart attack) for which compensation is sought. The critical question here for decision is whether there is other evidence from which the trial judge might reasonably infer the injury (fatal heart attack) did result from the employment that the experts say "could or might" be the cause of the injury (fatal heart attack). The only evidence on this point is by three witnesses, to-wit; petitioner, David Morelock and Charles Hurst.

Petitioner (wife) testified when deceased left home to go to work this Saturday morning he appeared normal. That upon his return home for noon lunch, about 12:15, he appeared normal. That after eating his lunch and mowing a small part in the yard he left to return to work, at about 12:45, and appeared to her normal.

David Morelock, assistant manager of the store, testified as follows:

"Q. Mr. Morelock, during this morning, from eight to 12, before he left for lunch, what was Mr. Livesay's appearance with regard to whether he looked sick or well?

"A. Normal.

"Q. What was his appearance during the week before, when you saw him every day?

"A. Normal.

"Q. Did you see Mr. Livesay when he left to go to lunch?

"A. I did.

"Q. Did he look normal then?

"A. Yes, sir.

"Q. Did you see Mr. Livesay when he entered the store after returning from lunch?

"A. I sure did. He was pale and sweating. His shirt was wet with sweat.

"Q. Then, after he entered the store, pale and sweaty, then what did he do?

"A. He got his apron and came back to the scales, and stayed about 10 minutes, and said he thought he would go in the back and lay down."

Charles Hurst, manager of the store, testified it was fifteen or twenty minutes after 1:00 P.M. when deceased asked to be relieved from the scales and then went into the back of the store to lie down.

■ We do not find any evidence upon which a reasonable inference may be drawn that any exertion or strain, normal or otherwise, of deceased's employment aggravated or contributed to precipitating the injury (fatal heart attack).

The judgment is reversed and the cause dismissed.