CITY OF LAWRENCEBURG and Bituminous Casualty
Insurance Company, Plaintiffs in Error,

*v.*

ROBERT L. NELSON and MRS. CORINNE C. NELSON,
Administratrix, Defendants in Error.

407 S.W.2d 674.

(*Nashville,* December Term, 1965.)

Opinion filed October 24, 1966.

ROBERT H. GAY, Lawrenceburg, and Ross & Ross, Savannah, for City of Lawrenceburg and Bituminous Casualty Insurance Co.

NOBLE L. FREEMON, Lawrenceburg, for Robert L. Nelson and Mrs. Corinne C. Nelson, administratrix.

MR. JUSTICE DYER delivered the opinion of the Court.

This is a Workmen's Compensation case. Plaintiffs in error, City of Lawrenceburg and its insurance carrier

Bituminous Casualty Insurance Company, will be referred to in this opinion as employer and the other parties by name.

The facts in this case are not disputed. Robert L. Nelson was, for a number of years, regularly employed by Sealtest Milk Company as a route man operating in and out of Lawrenceburg, Tennessee. Mr. Nelson was also employed as a Volunteer Fireman by the City of Lawrenceburg in which employment he was paid only when called out to a fire.

On 18 May 1964 between 7:00 and 8:30 p.m. Mr. Nelson, as a Volunteer Fireman, was called out to fight a practice fire. The job of handling a fire hose is measured by the amount of pressure on the hose and when such exceeds 80 pounds it is considered necessary to use two men. During the course of this fire Mr. Nelson, handling a hose under a 100 pounds of pressure without help, became pale and felt pain in his chest. Mr. Nelson lay down on the grass beside a building. A short time later a vehicle ran over the fire hose and an Assistant Fire Chief instructed Mr. Nelson to catch this vehicle and find out who was driving it. Mr. Nelson ran a short distance in an effort to overtake this vehicle. Upon returning the Fire Chief, noticing Mr. Nelson's condition, instructed he be taken to the hospital. Upon Mr. Nelson's insistence he was taken home rather than to the hospital. Upon arriving home about 10:00 P.M. Mr. Nelson went to bed and the pain subsided but later returned. About midnight Mr. Nelson was taken to the hospital and found to be suffering from a coronary thrombosis or myocardial infarction. He remained in the hospital seven weeks and then went home to further recuperate. In December 1964 Mr. Nelson's family doctor advised him

he could return to work but the Sealtest doctor advised waiting another two months, or until February 1965. Mr. Nelson did not return to work for Sealtest but in January 1965 obtained employment with the Lawrenceburg Electric Department as a helper to the meter reader. In this employment he would drive the meter reader around in a light truck and write down the readings. Also on walking routes he would walk along with the meter reader and write down the readings.

On the night of 14 February 1965 Mr. Nelson with his wife attended a dinner given by the Volunteer Firemen of the City of Lawrenceburg. Mr. Nelson ate lightly and in company with his wife returned home about 9:00 P.M. Later that night, about 1:00 A.M., Mr. Nelson awakened from his sleep and called to his wife that he had pains in his chest similar to the pains of 18 May 1964. Mr. Nelson, taken to the hospital, was diagnosed as having an acute coronary thrombosis. Mr. Nelson died about 4:00 A.M. on this night.

Mr. Nelson was male, age 39, height 5 feet 8 inches, weight 146 pounds, and prior to 18 May 1964 in apparent good health. He had a physical examination in 1958, including a cardiogram, which showed no evidence of a heart condition.

This case involves two separate petitions. The first petition, filed in September 1964 by Robert L. Nelson, alleged total and permanent disability resulting from two accidental injuries with the first a fall from a ladder on 21 January 1964 and the second the heart attack of 18 May 1964. The second petition filed by Mrs. Corinne C. Nelson, Administratrix of the estate of Robert L. Nelson, deceased alleged Robert L. Nelson died as a result of

the accidental injury of 18 May 1964. There was an order of revivor and the cases consolidated.

The trial judge, inter alia, found the first heart attack (18 May 1964) arose out of and in the course of Mr. Nelson's employment. There was no recovery from this first attack which contributed to the fatal attack on 14 February 1965. The widow, Corinne Nelson, for her own use and use of their son, Richard Arno Nelson, was awarded weekly benefits of $15.00 from 18 May 1964 not to exceed the maximum of $14,000.00. There is also an award of $1995.10 for medical and funeral expenses.

■ ■ There is material evidence to support the finding of the trial judge in regard to the first heart attack arising out of and in the course of employment. This being true the finding on this point is conclusive here on appeal. The question of causal connection between the first heart attack and the fatal heart attack is more difficult. This question of causal connection is a question of fact and we examine the record to determine if there is material evidence to support the finding of the trial judge on this point. See *Walker's Cash Stores, Inc. v. Livesay,* 215 Tenn. 306, 385 S.W. 2d 745 (1964).

The case at bar is more similar to *Powers v. Beasley,* 197 Tenn. 549, 276 S.W.2d 720 (1954) than any case cited in the briefs or that we have been able to find. In *Powers* the employee suffered two heart attacks with the first on 10 August 1953 and the second (fatal attack) on 27 February 1954. In *Powers* the trial judge found the first attack "at least substantially contributed" to the employee's death from the second attack and such was affirmed by this Court. This, though in different language, is the finding of the trial judge in the case at bar.

In *Powers* the employee, after the first attack, remained in the hospital for a period of two weeks and then was sent home for an extended period of quiet and rest. It was during this period of convalescence the second fatal attack occurred. In the case at bar Mr. Nelson had gone to work for another employer prior to his second fatal attack.

In the *Powers* case the employee was under the care of Dr. Adams, a heart specialist. The court in regard to this doctor's testimony stated:

Dr. Adams testified that the electrocardiograph of Mr. Beasley's heart taken on February 5, 1954, showed "a complete recovery from his infarction" and "did not even show his old injury", but that a previous infarction "is not always manifested on subsequent electrocardiographs". When asked whether the second attack was "independent of" the first, Dr. Adams' reply was "that would be my impression, Sir, because of the duration between the two". That "clinically" Mr. Beasley "had recovered from his first heart attack" and that "apparently" an "independent heart attack caused his death". He said that there is no way of knowing whether the second attack would have occurred if he had never had the first. Again, in answer to the question as to whether there was any connection between the first and second attack he said that he could not say whether the first attack was either a direct cause or a contributing cause to the second attack, but that "it may be a contributing factor", meaning only, as we understand his testimony as a whole, that the first attack *could* be a contributing factor to the second.

Dr. Adams also testified that a heart attack as severe as the first attack upon Mr. Beasley leaves the heart "with some impairment of function", and that when the second attack came on "the first one certainly didn't help the situation any. It made his heart more damaged than it previously was". And that "all I can say is this, that if you already have a damaged heart to put it simply, and if you further damage the heart by another insult, that heart would be less likely to recover in the event of another attack". 197 Tenn. 552, 276 S.W.2d 722.

In the case at bar the medical proof is by the testimony of two doctors. Dr. W. O. Crowder attended Mr. Nelson from the time of the first attack on and including the fatal attack. Dr. Crawford Adams, a heart specialist, had never treated or examined Mr. Nelson and his testimony is based upon hypothetical questions propounded to him.

Dr. Adams testified the injury to Mr. Nelson's heart muscle caused by the first attack had shown a good recovery prior to the fatal attack. He based this opinion on two facts. First, the elapsed time (9 months) between the first attack and the fatal attack indicating he went through the normal stages of recovery. Second, the fact the attending doctor felt recovery had progressed to the point Mr. Nelson could return to work. Dr. Adams also testified there was no connection between the first attack and the fatal attack.

Dr. Crowder testified Mr. Nelson's progress from the first heart attack was about normal and he felt Mr. Nelson had recovered sufficiently to return to work in

December 1964. Dr. Crowder was asked and answered the following questions.

Q. And if this man were engaged in a rather strenuous activity, such as holding a fire hose under pressure, and he exhibited pain in his chest and in his arms and weakness, then would that be considered the time of the heart attack?

A. You would assume that he had it then.

Q. And if this man had those conditions and lay down to rest, and then was called back to run after someone, and did run a distance of half a block, or more, would that aggravate his heart attack, if he had just had one?

A. If he had one it would aggravate it.

Q. And by aggravating would that tend to make it worse?

A. No, not necessarily, it wouldn't tend to make it worse, but it might tend to make him die at that time.

Q. Would it also tend to make him die even at a later time?

A. No, it probably wouldn't have anything to do with that.

\* \* \* \* \* \*

Q. There was no connection with the heart attack in February and the one in May?

A. If you have one, you are more likely to have another.

Q. But hadn't he recovered?

A. He had recovered, yes.

Q. So the heart attack he had in February was a different thrombosis from the one he had in May?

A. It was a different one, he maybe was more likely to have it because he had the other one.

Q. Why do you say that?

A. They just do, anybody with a coronary is likely to have another one, under the same conditions, it would make him more likely.

There is a difference on the facts between the case at bar and the *Powers* case. In the *Powers* case the employee suffered the second fatal attack while still under treatment for the first attack. In the case at bar Mr. Nelson suffered the second fatal attack after returning to work upon medical advice. This is a factual difference, but it is apparent from this record, Mr. Nelson, as a meter reader, was doing very light work and we do not think this factual difference alone would take the case at bar out from under the holding in the *Powers* case.

In the *Powers* case the controlling medical testimony is that the first heart attack "may" have been a contributing factor to the second fatal attack. In the case at bar we have almost the same medical testimony by Dr. Crowder when he says, "If you have one, you are more likely to have another." This testimony by Dr. Crowder is in keeping with the medical testimony in the *Powers* case where the doctor there testified, "when the second attack came on the first one certainly didn't help the situation any. It made his heart more damaged than it previously was." There is a difference in the medical

testimony between the case at bar and the *Powers* case. In the case at bar Dr. Crowder, who treated Mr. Nelson, testified Mr. Nelson had recovered from the first attack in December 1964 prior to the fatal attack February 1965. In the *Powers* case the employee was still under treatment (convalescence) at the time of the fatal attack.

In the case at bar viewing the medical testimony as a whole it is apparent Mr. Nelson, prior to the first heart attack, was suffering some underlying cause or causes detrimental to the proper functioning of the heart. In lay language we would say he had a weak heart. This is in keeping with common sense, since though the exertion of fighting this fire was above normal, it was not such as would have done damage to a healthy heart of a 39 year old man. We view the testimony of Dr. Crowder, that in December 1964 Mr. Nelson had recovered from the first attack, to mean recovery from the injury of this attack and not necessarily to mean recovery from any underlying cause of causes present prior to this attack.

Causal connection is cause in the sense the accident had its origins in the hazards to which the employment exposed the employee while doing his work. See *Tapp v. Tapp,* 192 Tenn. 1, 236 S.W.2d 977 (1951). In the case at bar, as previously stated in this opinion, there is material evidence the first heart attack had its origin in the hazards (fire of 18 May 1964) of employment, if not being the sole cause at least aggravated a pre-existing heart condition; and such is compensable under Workmen's Compensation. See *Coleman v. Coker,* 204 Tenn. 310, 321 S.W.2d 540 (1959). We think, under this record, in order to find the events arising from the fire of 18 May 1964 contributed to the fatal heart attack we would have to deal in speculation. We realize this is

a very close case but the undisputed facts show the treating doctor found Mr. Nelson had recovered from the injury received in the first attack and Mr. Nelson had in fact gone back to work even though such was light work.

In *Travelers Ins. Co. v. Googe,* 217 Tenn. 272, 397 S.W.2d 368 (1965) this court said:

While this Court is bound by the findings of the trial judge on questions of fact, whenever there is any evidence to sustain the findings, it is not bound by the conclusions drawn by the trial judge from undisputed facts, and may reach a different conclusion from that of the trial court on the same findings of fact.

The first petition filed in this cause alleged total and permanent disability from an accidental injury by fall from a ladder and the first heart attack. It has been determined the first heart attack arose out of and in the course of employment, but the extent of disability, whether it be partial, total, temporary or permanent has not been determined. We think this cause should be remanded, without prejudice to any of the parties, for such determination. The finding of the trial judge the first heart attack of 18 May 1964 arose out of and in the course of employment is sustained; otherwise the judgment is reversed and the cause remanded in accord with this opinion.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.