MRS. GLENN (MAXINE) POE, Appellant,

*v.*

E. I. DuPONT DeNEMOURS & COMPANY, INC., Appellee.

462 S.W.2d 480

(*Nashville,* December Term, 1970.)

Opinion filed December 7, 1970.

LACKEY, FARRELL & HARWOOD, Nashville, for appellant.

W. OVID COLLINS, JR., Nashville, for appellee; CORNELIUS, COLLINS, NEAL, HIGGINS & WHITE, Nashville, of counsel.

MR. SPECIAL JUSTICE ERBY L. JENKINS delivered the opinion of the Court.

This is a workmen's compensation proceedings brought by Mrs. Glenn (Maxine) Poe, widow of the deceased, seeking to recover for the death of her husband under Tennessee Workmen's Compensation law. At the time of his death, on September 25, 1966, the deceased was an employee of defendant, the E. I. DuPont DeNemours and Company, Inc.

The Chancellor was of the opinion that the petitioner failed to prove the occurrence of an accidental injury arising out of and in the course of the employment of the deceased and the existence of a causal connection between his employment and his death, and dismissed the petition.

The petitioner has perfected her appeal to this Court alleging as error: (1) the Chancellor erred in failing to find an injury by accident arising out of and in the course of employment and (2), the Chancellor erred in overruling petitioner's motion for an order requiring defend-

ant's expert medical witness to answer the questions regarding the treatment given the deceased at the defendant's medical clinic tending to prove negligence in treatment.

The questions presented to this Court are (1) is there material evidence in the record to sustain the Chancellor's findings that there was no causal connection between the deceased's activities at work and his death, and (2) did the Chancellor err in overruling petitioner's motion for an order requiring defendant's expert medical witness to answer the questions regarding the treatment given the deceased at the defendant's medical clinic.

The facts are that on the day of his death, the deceased was working on what is designated the "Process assignment." His duties consisted of checking certain gauges on the fourth, fifth and sixth floors of the building in which he worked. He would make two inspection patrols during an eight-hour shift, the first commencing at about 9:00 o'clock a. m. and the second patrol at about 1:00 o'clock p. m. It took about thirty-two minutes to make one complete patrol. When he finished a patrol, he would run certain tests on the injection rates of chemicals going into the production of dacron. These tests were done on the fourth floor, and would empty the waste matter, which usually weighed about fifteen pounds, into a drum beside the valve. When the drum was full, he would use a dolly to move it a distance of approximately forty feet to a storage area, and would replace it with an empty drum. These drums weighed about three hundred and fifty pounds when full. Not more than twice a day, the deceased would also wash certain "pot filters." He would

remove a dirty filter, put it onto a buggy, and then push the buggy to the wash station. There, he would use a hoist to lift the filter into the wash basin where he would clean it by hand. These filters weighed from thirty to forty pounds. Besides these routine duties, if something went wrong in the process mixture, the deceased would be called over an intercommunication system and would be instructed to go to a location on the fourth, fifth or sixth floor and correct the trouble. On the day of his death, however, there was no trouble in the process mixture, and the deceased was not required to make any such correction.

The deceased died on Sunday, September 25, 1966, having worked a normal eight-hour shift the day before. His regular days off were the preceding Thursday and Friday. On September 19th and 21st, he worked double shifts (sixteen hours each day). He had been on vacation from August 28th through September 17th, 1966. Thus, he had worked a total of fifty-six hours from August 28th through September 24th.

While performing his duties on September 25th, the deceased developed a pain in his chest and numbness and pain in both arms and shoulders. He went to the plant clinic at about 2:50 o'clock p.m., where he was received by the staff nurse, Mrs. Frances Allen. He told the nurse that he had eaten dry beans in the cafeteria for lunch, and the pain started approximately four hours later. Mrs. Allen telephoned the company physician, Dr. Miller, and informed him of the deceased's complaints. He instructed her to give the deceased a tranquilizer which she did. The deceased was put to bed on his arrival at the clinic and remained in bed until he was released at 4:00 o'clock p. m. to go home. He drove himself home, arriving there at

approximately 4:25 o'clock p.m. At about 4:30 o'clock p.m., he requested his wife, the petitioner, to call an ambulance and was taken to Memorial Hospital in Nashville, where he was pronounced dead on arrival at approximately 4:45 o'clock p. m. The physician who made out the death certificate diagnosed his condition as coronary thrombosis. The deceased had on several prior occasions complained of pain in his chest and numbness and pain in his arms and shoulders.

In his deposition, the defendant's expert medical witness testified, on the basis of facts supplied him, that he would have attributed the death to coronary thrombosis. He further testified on no less than ten different instances that the deceased's death could not have been caused by his work. This testimony was unequivocal and without qualification. The witness testified that "a heavy meal could have been more detrimental than the work, for instance, or if he smoked, and smoked three or four cigarettes, this could have been a more precipitating factor than activity. Activity prevents this disease. * * *" The petitioner's expert medical witness testified that he would attribute death to coronary thrombosis, but would say only that the deceased's work might have caused his death. He testified that it was impossible to state with medical certainty whether or not the deceased's work caused or contributed to his death.

On cross-examination of the defendant's medical witness, the petitioner's attorney sought to ask certain questions regarding whether the treatment given the deceased in the defendant's clinic was proper treatment for a person complaining of the symptoms of a heart attack. This line of questioning was objected to, and the

688

Chancellor ordered that such questions could not be asked.

■ We feel that there is material evidence in the record to support the findings of the Chancellor. See *Cas Walker's Cash Stores, Inc. v. Livesay*, 215 Tenn. 306, 385 S.W.2d 745 (1965), where the court held that "the question of causal connection is a question of fact and our examination of the record is for the sole purpose of determining if there is material evidence to support the finding of the Chancellor on this point." This rule was cited and followed in the later case of *City of Lawrenceburg v. Nelson*, 219 Tenn. 177, 407 S.W.2d 674 (1966).

■ Now, with reference to the proposition that the Chancellor committed error when he overruled the petitioner's motion for an order requiring the defendant's expert medical witness to answer the question regarding the treatment given the deceased at the defendant's medical clinic, we feel that the Chancellor was correct in excluding this testimony offered to prove the negligence of the defendant's staff nurse. Under this state's Workmen's Compensation Law, liability is imposed upon the employer without regard to the fault of either party except in cases where the employee may be guilty of willful misconduct, intentional self-inflicted injury, intoxication, or willful failure or refusal to use a safety appliance or to perform a duty required by law. *Lennon Co., Inc. v. Ridge*, 219 Tenn. 623, 412 S.W.2d 638 (1967). Compensation will be awarded if there is causal connection between conditions under which the work was required to be performed and the resulting injury; the question of whether the employer has been negligent is

not involved. *Bledsoe County Highway Department v. Pendergrass*, 205 Tenn. 697, 330 S.W.2d 313 (1959); *Morrison v. Tennessee Consolidated Coal Co.*, 162 Tenn. 523, 39 S.W.2d 272 (1930); and *Lincoln Memorial University v. Sutton*, 163 Tenn. 298, 43 S.W.2d 195 (1931). Since negligence is not involved in a workmen's compensation proceeding, evidence of the employer's negligence or the negligence of its staff nurse is irrelevant and inadmissible. See 12 Schneider, Workmen's Compensation Sec. 2530(f) (1959).

Accordingly, the order of the Chancellor dismissing the petition is affirmed.

DYER, CHIEF JUSTICE, and CRESON, HUMPHREYS and McCANLESS, JUSTICES, concur.

OPINION ON PETITION TO REHEAR

MR. SPECIAL JUSTICE ERBY L. JENKINS.

Petitioner has filed an earnest petition to rehear. The Court, having considered the petition, finds nothing therein to cause us to change our original opinion. The petition to rehear is hereby denied.

DYER, CHIEF JUSTICE, and CRESON, HUMPHREYS and McCANLESS, JUSTICES, concur.