Raymond E. TINDALL, Sr.,
Plaintiff-Appellant,

v.

WARING PARK ASSOCIATION and
Liberty Mutual Insurance Co.,
Defendants-Appellees.

Supreme Court of Tennessee,
at Jackson.

March 2, 1987.

James E. Blount, III, Memphis, for plaintiff-appellant.

Jack A. Childers, Jr., Johnson and Bateman, Memphis, for defendants-appellees.

OPINION

DROWOTA, Justice.

The single issue presented by this Worker's Compensation appeal is whether material evidence supports the judgment of the trial court. The Plaintiff, Raymond E. Tindall, has appealed the trial court's finding that he failed to carry his burden of proof to show a causal connection between his injury and his employment with Defendant. Defendants are Waring Park Association, the employer, and its insurer, Liberty Mutual Insurance Company.

The injuries involved in this case were separated by a period of over eight months. At the time of the first injury, Plaintiff, a full-time employee of ITT Continental Baking Company (Wonder Bread) for 13 years, was working part-time for Defendant, an apartment complex in Shelby County, as a maintenance man. On March 14, 1984, while repairing a hole in a sidewalk, Plaintiff lifted a sack of cement from a truck and carried it to the sidewalk; when he attempted to get up after putting the bag down, he felt a sharp pain in his back and was unable to stand easily. This injury was reported to his employer, the Defendant, and Plaintiff sought treatment from Dr. Roy Tyrer, a neurological surgeon. Plaintiff was hospitalized on the day of the accident. A CT scan and myelogram were performed but the results were somewhat inconclusive, although bulging of his discs along his spinal column at L–4 and more mildly at L–5 was indicated. Having undergone conservative treatment, Plaintiff was discharged from the hospital on March 18, 1984. When he returned to Dr. Tyrer for follow-up treatment on March 23, 1984, Dr. Tyrer prescribed physical therapy and continued pain medication. He was seen again on April 18, 1984, and had improved substantially, although he was displaying some lingering symptoms. From the date of the accident until May 6, 1984, Plaintiff was unable to work and received temporary total disability benefits for this period;

his medical expenses were also paid by Defendants. Dr. Tyrer released Plaintiff for work after seeing him on May 4, 1984; his final diagnosis was acute lumbosacral strain rather than a more serious herniated disc problem.

In late May and early June, 1984, a recurrence of disabling symptoms was experienced by Plaintiff. Having returned to Dr. Tyrer's care, Plaintiff was unable to work for a number of days; physical therapy and medication were renewed. He saw Dr. Tyrer again on June 8, 1984, and had significantly improved; he was released to return to work. For the next five months, although taking medication regularly for persistent pain, Plaintiff performed his full-time job, occasionally working some overtime. Plaintiff had discontinued his part-time job with Defendant in May. Between June 8 and December 4, 1984, Plaintiff did not see a doctor about his back problems. On December 2, 1984, while at home, he leaned over to tie his shoes, a pencil fell out of his pocket, and when he reached to pick it up, he experienced a sharp, stabbing sensation in the injured area of his back. He was unable to stand. He felt a numbness in his legs and had a general recurrence of his symptoms.

On December 4, 1984, Plaintiff went to see Dr. Craig Grant, an associate of Dr. Tyrer, who was out of town at the time. He was treated conservatively for several days but when he returned to Dr. Grant on December 10, 1984, he was unimproved. On December 13, 1984, Plaintiff was admitted to the hospital. A myelogram was done, revealing a herniated disc at L-4. A laminectomy was performed on December 17 and Plaintiff was subsequently discharged on December 20, 1984. Dr. Grant saw him again on January 10, 1985, and Plaintiff was making satisfactory progress recovering; however, he experienced some post-operative complications that prevented him from returning to work until July 23, 1985.

This action for Worker's Compensation benefits was initiated on December 14, 1984. Plaintiff sought recovery of temporary total disability benefits, an award for permanent disability, and payment of his medical expenses. The periods of temporary total disability for which Plaintiff made a claim were from June 3 through June 10, 1984, and from December 2, 1984, through July 21, 1985. At trial on March 3, 1986, Plaintiff testified that he had not had back problems prior to the March, 1984, injury, and that he had never fully recovered from this injury. He is no longer able to do many of the recreational activities that he previously enjoyed, although, with some limitations, he can do most of his tasks in his employment for Wonder Bread. He testified that he continues to suffer pain from these injuries.

The only medical evidence offered by Plaintiff was the deposition of Dr. Grant. Dr. Grant testified that he rated Plaintiff as retaining a 15% permanent partial anatomical disability as the result of his back problems. When asked whether the March 14, 1984, accident was the cause of the rupture on December 2, 1984, Dr. Grant stated that a disc does not ordinarily rupture unless it has been predisposed to do so by an injury and that "historically [March 14] could be at the point and time the disc sustained the initial [i.e., predisposing] injury...." Nevertheless, Dr. Tyrer indicated in his notes and on an insurance form that Plaintiff would not sustain any permanent impairment from his March 14, 1984, injury. On cross-examination, Dr. Grant stated that in his opinion Plaintiff

"extruded his disc on the day he bent over to pick up whatever it was he was going to pick up. I think he had a weak disc before that time, one that was predisposed to do what it finally did. At what point in time that particular disc was injured, I have no way of knowing."

On redirect, Dr. Grant reiterated that "[n]ow at what point in time that disc was weakened is purely speculative."

At the conclusion of the evidence at trial, the trial court made its findings of fact, stating that the medical proof showed that a ruptured disc has a number of possible causes and that the evidence did not sufficiently show that the December 2, 1984, injury arose as the result of the March 14,

1984, accident. The trial court entered its Order of Judgment on March 7, 1986, finding that Plaintiff had been paid all the benefits and medical expenses to which he was entitled for the March 14, 1984, injury. The trial court concluded that as to the December, 1984, incident, Plaintiff had failed to carry his burden of proof regarding causation. Judgment was entered for Defendants. On appeal, Plaintiff contends that the evidence fully supports the conclusion that the December 2, 1984, injury was a direct and actual consequence of the March 14, 1984, accident, which was a clearly compensable injury. Because no intervening cause has broken the chain of causation, the subsequent injury is compensable as well.

The standard of review in this appeal is under the material evidence rule. *See Alley v. Consolidation Coal Co.*, 699 S.W.2d 147, 148 (Tenn.1985). As in most civil actions generally, the plaintiff in a Worker's Compensation suit has the burden of proving every element of his case by a preponderance of the evidence. *See, e.g., Owens Illinois, Inc. v. Lane*, 576 S.W.2d 348, 350 (Tenn.1978); *Harris v. Kroger Co., Inc.*, 567 S.W.2d 161, 163 (Tenn.1978); *Travelers Insurance Co. v. Googe*, 217 Tenn. 272, 279, 397 S.W.2d 368, 371 (1965). Moreover, the trial court's determination that a party has failed to carry the burden of proof on any or all of the elements, including causation, is a finding of fact to which this Court is generally bound under the material evidence rule. *See, e.g., Walls v. Magnolia Truck Lines, Inc.*, 622 S.W.2d 526, 527 (Tenn.1981); *Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Poe v. E.I. DuPont DeNemours & Co., Inc.*, 224 Tenn. 683, 688, 462 S.W.2d 480, 482 (1970); *Travelers Insurance Co. v. Googe, supra*, 217 Tenn. at 274, 397 S.W.2d at 369; *Cas Walker's Cash Stores, Inc. v. Livesay*, 215 Tenn. 306, 309, 385 S.W.2d 745, 746 (1965); *Lynch v. J.C. LaRue*, 198 Tenn. 101, 106, 278 S.W.2d 85, 87 (1955).

This Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence. *See, e.g., Seay v. Town of Greeneville*, 587 S.W.2d 381, 383 (Tenn.1979); *Cortrim Manufacturing Co. v. Smith*, 570 S.W.2d 854, 855 (Tenn. 1978); *American Enka Corp. v. Sutton*, 216 Tenn. 228, 236–237, 391 S.W.2d 643, 645 (1965). Furthermore, "by 'causal connection' is meant not proximate cause as used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work." *Tapp v. Tapp*, 192 Tenn. 1, 6, 236 S.W.2d 977, 979 (1951) (citation omitted). Although absolute certainty is not required for proof of causation, *see Martin Bros. Container and Timber Corp. v. Lynch*, 551 S.W.2d 687, 689 (Tenn.1977), medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility. *See, e.g., Patterson v. Tucker Steel Co.*, 584 S.W.2d 792, 794 (Tenn.1979); *Owens Illinois, Inc. v. Lane, supra*, at 349; *Cas Walker's Cash Stores, Inc. v. Livesay, supra*, 215 Tenn. at 310–311, 385 S.W.2d at 747; *Lynch v. J.C. LaRue, supra*, 198 Tenn. at 104–105, 278 S.W.2d at 86. "If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating without employment, there can be no award." *Tibbals Flooring Co. v. Stanfill*, 219 Tenn. 498, 508, 410 S.W.2d 892, 897 (1967). If, however, equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law. *See, e.g., Seay v. Town of Greeneville, supra*, at 383; *Patterson v. Tucker Steel Co., supra*, at 794; *Owens Illinois, Inc. v. Lane, supra*, at 349; *P & L Construction Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978); *Travelers Insurance Co. v. Flatford*, 551 S.W.2d 695, 696–697 (Tenn.1977); *Travelers Insurance Co. v. Googe, supra*, 217 Tenn. at 278, 397 S.W.2d at 370; *Cas Walker's Cash Stores,*

*Inc. v. Livesay, supra,* 215 Tenn. at 311, 385 S.W.2d at 747.

Plaintiff relies heavily on *Jones v. Huey,* 210 Tenn. 162, 357 S.W.2d 47 (1962). He argues on this authority that when the proof shows that the subsequent injury is a direct and natural consequence of the compensable injury, the later injury is compensable as well. The chain of causation was unbroken between March and December, 1984, and thus the December injury is compensable. This argument assumes that the medical evidence is clearly shown on the record, but here "the facts established by the undisputed evidence make reasonable each of two contrary inferences. One of these inferences supports a conclusion of a causal connection. The other supports an opposite conclusion." *Lynch v. J.C. La-Rue, supra,* 198 Tenn. at 105, 278 S.W.2d at 87. *See also Martin Bros. Container and Timber Corp. v. Lynch, supra,* at 689 ("[T]he [trial court] could have held in favor of either party with the support of ample, material and credible evidence.").

We agree with Plaintiff that the record could theoretically support a decision in Plaintiff's favor:

> "In a workman's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident 'could be' the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury."

*P & L Construction Co., Inc. v. Lankford, supra,* at 794 (citations omitted). The trial judge, however, declined to draw this inference, and, under the material evidence rule, the trial court's finding that Plaintiff failed to carry his burden of proof on causation is conclusive for this Court. The medical evidence is at best equivocal and without more definite proof of causation, considering the lapse of time between the injuries, the trial court was justified in finding that Plaintiff had failed to carry his burden of proof in this case. "It is elementary that an award cannot be predicated solely upon the testimony of medical experts who are not will-

ing to go any further than to say that it 'is possible' or 'could be' that there is a causal connection between the accident and the injury...." *Lynch v. J.C. LaRue, supra,* 198 Tenn. at 104, 278 S.W.2d at 86. The permissible inference of causation that a trial court may draw when speculative medical evidence concerning causation is supported by other evidence was not drawn by the trial court in this case. The trial court's determination on this issue is supported by material evidence in this record. As this Court concluded in *Jones v. Huey, supra,* "we are satisfied that the [injury to] this employee ... was in no way connected with his employment and is not compensable.... For the reasons hereinabove stated, we are constrained to affirm the judgment of the trial court." 210 Tenn. at 169, 357 S.W.2d at 50.

Accordingly, we affirm the decision of the trial court. The costs are taxed to the Plaintiff.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.