Cynthia G. CLARENDON,
Plaintiff–Appellee,

v.

BAPTIST MEMORIAL HOSPITAL,
Defendant–Appellant.

Supreme Court of Tennessee,
at Jackson.

Sept. 17, 1990.

R. Sadler Bailey, Memphis, for defendant-appellant.

James L. Kirby, Harris, Shelton, Dunlap and Cobb, Memphis, for plaintiff-appellee.

## OPINION

FONES, Justice.

In this workers' compensation appeal, Defendant challenges the Chancellor's findings that Plaintiff sustained an injury arising out of and in the course of her employment and that the injury was an eighty percent permanent partial impairment to the body as a whole. Defendant also argues that Plaintiff did not provide it with proper notice of the injury and that all the medical expenses awarded were not shown to have been reasonable and necessary. We affirm the trial court on all issues, except the award for medical expenses; we reduce the award so that Plaintiff is not given the expenses from her visits to Dr. James Galyon's office.

Cynthia G. Clarendon, the plaintiff, was a registered nurse at Baptist Memorial Hospital in Memphis. On Sunday, 25 September 1988, Plaintiff helped two other nurses lift a two to three hundred pound patient up in bed. Plaintiff did not feel any repercussions until the next day; on Monday she felt "achy." Plaintiff was off work Monday and Tuesday, but reported as scheduled on Wednesday. Concerning the pain, Plaintiff testified that she thought she had "pulled something." The pain increased, however, two-fold through the day. The pain increased again on Thursday, although she did not work. Friday was Plaintiff's next scheduled day to work, but she decided to see Dr. James Galyon first. At this time, the pain had increased intensively, and as a result, she was dragging her left leg and foot. Dr. Galyon prescribed one week of bed rest and some medication for Plaintiff. Plaintiff telephoned Defendant from the doctor's office and spoke with Beverly Owens, a co-worker. Ms. Owens testified that Plaintiff "said she was at the doctor's office because she had injured her back a couple of days ago at work." Plaintiff testified that she told Ms. Owens her injury occurred on Sunday. Plaintiff also asked Ms. Owens to inform Defendant of her injury, which she did when she talked with the charge nurse.

On Tuesday, 4 October, Plaintiff telephoned her supervisor, Donna Ray, and told her what had happened. Ms. Ray testified that, the best that she can remember, Plaintiff told her the lifting incident occurred on 28 September. Plaintiff's next appointment with Dr. Galyon was on 7 October, and the doctor ordered an additional week of bed rest. He also referred her to Dr. Edward Kaplan, a neurosurgeon, who diagnosed Plaintiff as suffering from a disc herniation. On 13 October Plaintiff completed a leave of absence form, which states that she injured herself lifting a patient. No injury date is given. This form is signed by Ms. Ray and the department director. The initials "WC" are typed on the line entitled "type of leave approved." On 27 October Plaintiff completed a "confidential report of unusual occurrence to hospital attorney." The date of the injury is listed as 25 September. For the first two weeks of Plaintiff's absence from work, "sick leave" and "WC" were next to her name on the employees' sign-in sheet.

On 17 November 1988 Dr. Kaplan operated to remove the L–4, L–5 disc herniation on the left. Dr. Kaplan testified that the injury was consistent with the history given by Plaintiff. He also opined that a slow onset of pain over a four-day period can occur with a disc herniation. Dr. Kaplan placed a forty pound weight limit on Plaintiff and stated that she sustained a ten percent permanent partial impairment to the body as a whole. Dr. Kaplan released Plaintiff to return to work on 27 February 1989, but due to a prior, unrelated knee injury she could not return until a later date. Before she could resume working, Plaintiff was injured again when a neighbor's dog knocked her to the ground. At the time of this trial, Plaintiff was unable to work due to this subsequent injury.

After the trial, the chancellor awarded Plaintiff benefits for an eighty percent permanent partial disability to the body as a whole and for all medical expenses incurred. Defendant brings this appeal and raises several issues. First, Defendant argues that Plaintiff did not prove that the injury arose out of and in the course of her employment. Defendant

seems to rely upon the facts that Plaintiff did not feel any immediate pain when lifting the patient and Dr. Kaplan stated that a person with a disc herniation may not be aware of any trauma. It is argued, therefore, that the injury could have occurred anytime.

Dr. Kaplan also testified, however, that the injury is consistent with the events of the week of 25 September 1988. In *P & L Construction Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978), we held:

In a workmen's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident "could be" the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury.

In the present case, Dr. Kaplan's testimony provides the medical proof that Plaintiff's employment could be the cause of her injury. In addition, it may reasonably be inferred from Plaintiff's testimony that the lifting incident was the cause of the disc herniation. The trial court found that the evidence was sufficient on the causation issue, and we affirm because the preponderance of the evidence is not otherwise. T.C.A. § 50–6–225(e). There is no evidence that the injury occurred in any way other than as Plaintiff testified.

■ Defendant's second argument is that Plaintiff's failure to follow the notice requirements of T.C.A. § 50–6–201 disqualifies her from any workers' compensation award. T.C.A. § 50–6–201 states:

Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation which may have accrued under the provisions of the Workers' Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compensation shall be payable under the provisions of this chapter unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

Plaintiff lifted the heavy patient on 25 September, and a pain in her lower back increased throughout the week. On Friday, Plaintiff went to see her doctor. After Dr. Galyon's diagnosis, Plaintiff called Defendant and talked with Ms. Owens. It is undisputed that Plaintiff told Ms. Owens that she injured herself at work and that Ms. Owens should inform Defendant of this situation. Ms. Owens did, in fact, notify the charge nurse of the accident and injury. Plaintiff also personally notified her supervisor by telephone four days later. Thus, the "actual knowledge" requirement of the statute was fulfilled. *See Gluck Brothers, Inc. v. Breeden*, 215 Tenn. 587, 597, 387 S.W.2d 825, 830 (1965).

■ The only dispute between the parties is whether Defendant was told the injury occurred on Sunday, 25 September or Wednesday, 28 September. Plaintiff testified that she told Ms. Owens that she helped the other nurses lift the patient on Sunday, while Ms. Owens recalled being told that the incident occurred on Wednesday. Cherry Cooper, a staff nurse, testified that she recalls helping Plaintiff lift this patient, but does not remember the date. Defendant argues that Plaintiff's testimony and history reveal that she is untruthful. For example, at one point when giving her medical history, Plaintiff wrote that she had only been admitted to a hospital when she gave birth to her children. She listed the years, not the specific dates, that they were born. In fact, Plaintiff was admitted to hospitals numerous times for various illnesses. Also, Plaintiff stated at trial on direct examination that she had been a registered nurse for "about five years." On cross examination, she explained that she had worked irregularly

since her 1957 graduation from nursing school. The transcript reads as follows:

Q. You said you had five years of nursing experience, I believe. That is the last five years consecutively. But you have had other experience, have you not?

A. I have had brief nursing experience, but nothing for any length of time.

Q. Have you not worked 15 years as a nurse?

A. No.

.    .    .    .    .

Q. How many years all told have you worked as a nurse, and forget the gaps, and I understand it's part of the total, how much nursing experience do you have?

A. Up to present?

Q. Yes, ma'am.

A. Approximately nine years, maybe ten total. It's hard.

Q. Maybe ten?

A. It's hard to figure out.

Q. Well, Ms. Clarendon, on page 52 of your deposition or your sworn statement, which was taken December 7, 1988, the question on line 17: Now, you've been a nurse for how long now, about 15 years? Answer: I've been a nurse since 1957. Question: Since 1957. In the last 32 years, how many of those years have you actually been practicing as a nurse? Your answer was: About 15 years. Do you wish to revise that?

A. That's incorrect, basically. It's hard to figure out when you work for a short period of time and then don't.

The chancellor found that Plaintiff was a truthful person, but she was also "neither alert nor shows deep concern with attention to details." His conclusion was that Plaintiff was "a very lazy person." In *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315 (Tenn.1987), this Court held, "Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." *See also Tenn–Tex Properties v. Brownell–Electro, Inc.*, 778 S.W.2d 423, 426 (Tenn.1989) ("Where the issue for deci-

sion depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight."). After reviewing the entire record, we find that a preponderance of the evidence does not show that the chancellor was in error. *See* T.C.A. § 50–6–225(e). It is clear that Plaintiff does not appreciate the importance of being exact in her descriptions, but a preponderance of the evidence does not prove that she is untruthful.

█ Even if Plaintiff's version is not accepted, the trial court must be affirmed. In *Masters v. Industrial Garments Manufacturing Co.*, 595 S.W.2d 811, 815 (Tenn. 1980), this Court stated, "[T]he employee must prove that the employer had actual knowledge of the time, place, nature and cause of the injury." Plaintiff's leave of absence report, which described the injury, was signed by her supervisor and department director within thirty days of the incident. Thus, Defendant had actual knowledge of the place, nature, and cause of the injury. And the oral misidentification of the time of the injury, if it occurred, is not such a defect as to require a finding of lack of notice.

When written notice is given, defects or inaccuracies are not a bar to compensation, unless the employer was prejudiced by the failure to give proper notice. T.C.A. § 50–6–202(a)(2). Equitable treatment has also been applied to a defect in the actual knowledge of the employer. *See Aluminum Co. of America v. Baker*, 542 S.W.2d 819, 822 (Tenn.1976). In *Powers v. Beasley*, 197 Tenn. 549, 276 S.W.2d 720 (1955), a witness saw an employee suffer a heart attack after carrying heavy items at work. The witness informed the employer of the situation. At trial, the employer challenged the notice by claiming that the witness did not suggest to him that the work contributed to the heart attack. After dispensing with this argument on other grounds, the Court held, "Moreover, such defect, if it be such, could not possibly have prejudiced employer, Powers. Hence, the statute does not permit him to take advantage of such supposed defect." *Id.* at 552,

276 S.W.2d at 721. In the present case, there is no showing that Defendant's belief that the injury occurred on Wednesday, rather than Sunday, prejudiced it. It is undisputed that Defendant had notice "that the employee claim[ed] to have suffered an injury arising out of and in the course of her employment." *Masters*, 595 S.W.2d at 816.

■ Defendant's third argument is that the trial court erred in its determination of the extent of Plaintiff's disability. The court awarded Plaintiff for an eighty percent permanent partial disability to the body as a whole. In determining the extent of an employee's impairment, courts must measure the worker's vocational disability. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 458 (Tenn.1988). This assessment is based upon many factors, including the employee's age, education, skills and training, local job opportunities, and capacity to work at the kinds of employment available in his disabled condition. *See Newman v. National Union Fire Ins. Co.*, 786 S.W.2d 932, 934 (Tenn. 1990).

■ Gregg Cates, an expert in vocational rehabilitation, testified for Plaintiff that she cannot perform the duties of a clinical nurse, because she is restricted from lifting forty pound objects. He also stated that "eight out of the ten nurses employed in any hospital setting are clinical type nurses." Thus, Plaintiff "cannot do eight out of the ten jobs available based on her experience." Plaintiff also testified about her capacity to work. As noted above, she stated that she could not stand or sit for long periods of time.

Defendant cites Plaintiff's nursing degree and refresher courses, academic credit at Memphis State University, and work experience to show that the preponderance of the evidence proves the chancellor erred. Defendant also presented a vocational expert at trial. Ronnie Wilkins testified that there are numerous nursing positions for which Plaintiff is qualified. Defendant's expert did not give a percentage of disability.

Our review of findings of fact by the trial court is *de novo*, accompanied by a presumption of correctness of the findings, unless a preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e). The chancellor found that Plaintiff sustained an eighty percent permanent partial disability to the body as a whole, and we affirm because a preponderance of the evidence is not otherwise. In determining Plaintiff's job opportunities, Defendant's expert did not consider all of her limitations. He was asked, "When you tell us about jobs that are available to her are you considering how much she can sit or how much she can stand?" He answered, "No, I'm not." This expert also conceded that "key lines of demarcation" on a nurse's employability occurs at or near fifty-five years of age. Plaintiff was fifty-three years old.

■ Defendant contends that the trial court erred in awarding plaintiff, "the reasonable medical expenses incurred by the plaintiff as a result of her injury of 25 September 1988, to the extent not previously paid by the defendant under its self-insured employee benefits program." Specifically, defendant says that the medical expenses incurred as a result of plaintiff's visits to Dr. J.T. Galyon should not be awarded because plaintiff failed to offer any proof that those expenses were reasonable and necessary.

When Plaintiff first saw Dr. Galyon on Friday afternoon following her injury on Sunday, she expected to report for work that evening, but he prescribed otherwise. Thereafter the tests he ordered resulted in his referring plaintiff to Dr. Kaplan for disc surgery. Under those circumstances we find that Dr. Galyon was "justifiably engaged" without consulting her employer because at the time she first saw him she was not aware that she had sustained a work injury. *See Goodman v. Oliver Springs Mining Co.*, 595 S.W.2d 805 (Tenn. 1980).

Also, defendant has denied all liability for the accident and injury sustained by Plaintiff and thus is not entitled to assert that Dr. Galyon was selected by Plaintiff in violation of the statutory provisions re-

specting the choosing of physicians. *CNA Insurance Co. v. Transou,* 614 S.W.2d 335 (Tenn.1981).

We have considered, sua sponte, the question of whether that circumstance justifies finding that the principle adopted in *Russell v. Genesco, Inc.,* 651 S.W.2d 206 (Tenn.1983) applies to Dr. Galyon, to-wit: any treatment ordered by physicians designated by the employer are presumed to be necessary and reasonable.

One of the reasons for the adoption of that principle was that since the legislature granted employers the right to designate three "reputable physicians and surgeons" the employer's choices should be such that the designees would order only those medical services that are necessary and at charges that are reasonable. We cannot say that the circumstance of Dr. Galyon's selection makes him an employer's designee for the purpose of the *Genesco* rule. In addition, defendant's denial of any liability should have put Plaintiff on notice that she would be required to prove every element of her case, which includes the neces-

sity and reasonableness of medical expenses of a non-designated physician's fees and ordered medical expenses. Thus, the charges of Dr. Galyon, Plaintiff's family orthopedic physician, are not recoverable because the record is devoid of any evidence establishing that they were reasonable and necessary.

In conclusion, the judgment of the trial court is affirmed as modified. This case is remanded to the trial court for correction of the judgment as indicated above and for any other proceedings which may be necessary. Costs of this appeal are taxed to Defendant–Appellant.

DROWOTA, C.J., COOPER and O'BRIEN, JJ., and TATUM, Special Judge, concur.