

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**August 26, 2015**

**TENNESSEE WORKERS' COMPENSATION APPEALS BOARD**

**Time: 12:00 PM**

| | | |
|---|---|---|
| Bobby James | ) | Docket No. 2015-02-0024 |
| | ) | |
| v. | ) | |
| | ) | State File No. 76452-2014 |
| Landair Transport, Inc. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 26th day of August, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| V. Hood-Schneider | | | | | X | vhslaw1@gmail.com |
| Mike Jones | | | | | X | mjones@wimberlylawson.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**August 26, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:00 PM**

| | | |
|---|---|---|
| Bobby James, | ) | Docket No. 2015-02-0024 |
| | ) | |
| v. | ) | |
| | ) | |
| Landair Transport, Inc., | ) | State File No. 76452-2014 |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

---

**Affirmed and Remanded – August 26, 2015**

---

In this interlocutory appeal, the employee was involved in a motor vehicle accident while working within the course and scope of his employment as a truck driver. The employee sought treatment from various providers and began exhibiting symptoms of confusion, memory loss, and other cognitive difficulties. In response to the employee's Request for Expedited Hearing, which sought a ruling based on a review of the file without an evidentiary hearing, the trial court concluded that the employee did not come forward with sufficient evidence from which it could determine that the employee is likely to prevail at a hearing on the merits. As a result, the trial court denied the employee's request for workers' compensation benefits. Having carefully reviewed the record, we affirm and remand the case for any further proceedings as may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley, joined.

Vakessha Hood-Schneider, Nashville, Tennessee, for the employee-appellant, Bobby James

Michael W. Jones, Nashville, Tennessee, for the employer-appellee, Landair Transport, Inc.

1

## Factual and Procedural Background

The employee, Bobby James ("Employee"), is a forty-three year-old resident of Raleigh, North Carolina, who was employed by Landair Transport, Inc. ("Employer") as a truck driver. In the early morning hours of August 20, 2014, while Employee was operating a truck near Atlanta, Georgia, the trailer attached to his truck was rear-ended by a vehicle being driven by a third party.[1] The police report indicates that Employee reported no injuries at the scene. The emergency room report from Employee's visit approximately twelve hours after the injury indicates that Employee complained of "slight neck pain," but that the "degree of pain is minimal." The medical records are unclear as to whether Employee struck his forehead on the steering wheel at the time of the impact and/or whether he lost consciousness. X-rays revealed no acute fractures in the cervical or lumbar spine areas. Employee was released on August 20, 2014, by the emergency room physician with no work restrictions.

Within approximately two weeks of the accident, Employee began reporting to medical providers near his home in North Carolina, complaining of "headache, photophobia, memory problems and generalized body aches." His appearances at various North Carolina medical facilities over the following weeks were marked by reports that Employee appeared confused, disoriented, and semi-incomprehensible. He was often unable to answer questions in a straight-forward manner. All diagnostic testing, including a CT of the head, an MRI of the brain, and an EEG, were negative. On September 17, 2014, Dr. Matthew Scholar opined that Employee suffered from "intermittent confusion status post head injury." In a letter dated September 17, 2014, Dr. Sally Wood stated, "[Employee] should remain off work until at least September 30, 2014 when he receives further evaluation by Dr. Filer." Dr. Lindsay Wilson commented in a report dated September 17, 2014, that Employee may suffer from "post-concussive syndrome especially in the setting of a recent car accident and a previous similar injury." In the Physician Discharge Summary dated September 18, 2014, Dr. Wilson noted that Employee was "referred . . . to the traumatic brain injury clinic with Dr. Filer." It is unclear from the record whether Employer authorized or paid for any treatment with the providers located in North Carolina.

There are also reports in the record indicating that Employee had similar symptoms of cognitive dysfunction prior to the work-related accident. In a report dated September 25, 2014, Dr. Cecilia McKay noted the following:

> He has 4 prior emergency room visits here in the past, starting in 2008
> where he fell off a porch and was dizzy and lost consciousness the next day

---

[1] No evidentiary hearing was conducted and no joint statement of the evidence was submitted on appeal. Thus, we have gleaned the factual background from the pleadings, exhibits accepted by the trial court, and the trial court's order.

after head trauma, one in 2011 complaining of a year of dizziness and occipital migraines with pain in his head traveling down his body and into his leg with paresthesias of left side and blurred vision, for which he had a CT scan of his brain that was negative. . . . In 11/2012 he had a single car accident, presented complaining of thinking he had a seizure because [he awakened] in a ditch after a black out, but he had no incontinence.

In a neuropsychological consultation report dated September 25, 2014, Karen Wilhelm, Ph.D., noted that "[t]he patient presents with a very unusual constellation of cognitive symptoms." She then concluded that "[t]he etiology of his difficulty is unclear."

On November 6, 2014, Employee was evaluated by Dr. Brian Casazza, who concluded that Employee suffered from "chronic cervical and lumbar pain." However, there was "[n]o evidence of radiculopathy" and "no nerve root compression [that] correlates with his symptoms." Dr. Casazza noted the occurrence of the August 2014 accident, but did not expressly relate his diagnoses to that accident. Moreover, Dr. Casazza did not address Employee's work status, possibly due to his apparent understanding that the visit did not arise from a work-related accident, as evidenced by his inclusion of the statement "this visit does not involve Workman's Compensation" in his November 6, 2014 report.

On November 18, 2014, Dr. William Filer issued a "To Whom It May Concern" letter, stating that he had seen Employee as a patient "to evaluate symptoms following a work-related motor vehicle accident on 8/20/2014." Dr. Filer then stated that Employee "should remain out of work until I can review results of his neuropsychological testing . . . . This restriction should continue until reassessed on his appointment on 12/16/2014."

In his report dated January 20, 2015, Dr. Filer concluded that "[h]is present symptoms are thought unlikely to be due to ongoing post-concussive disorder and more likely related to mood disorder and poor sleep, with possible contribution of musculoskeletal pain." Dr. Filer then stated, "no specific restrictions are recommended as it relates to his reported head injury."

Following an alleged episode of blacking out in late January 2015, Employee returned to Dr. Filer on February 10, 2015, at which time Dr. Filer commented that Employee "had a recent syncopal episode, but I do not think this is likely attributed to his work-related injury, which would not be expected to cause syncope nor seizures." Dr. Filer then reiterated, "I did not recommend any specific work restrictions related to his work-related injury on 8/20/2014."

Following a review of the records, the trial court entered an Expedited Hearing Order Denying Requested Relief on July 27, 2015, concluding, "[Employee] has not

3

come forward with sufficient evidence from which this Court [can] conclude[] that he is likely to prevail at a hearing on the merits." Employee timely filed a Notice of Appeal and the record was received by the Clerk of the Workers' Compensation Appeals Board on August 18, 2015.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;

(B) Exceed the statutory authority of the workers' compensation judge;

(C) Do not comply with lawful procedure;

(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### Record on Appeal

As a preliminary matter, we note that the parties are charged with the responsibility of submitting evidence to the trial court in a specific manner, which is designed to make processing and deciding cases more expedient. Rule 0800-02-21-.16(6), which specifically addresses the submission of medical records in the Court of Workers' Compensation Claims, mandates that a party submitting medical records in excess of ten pages "shall include a chronological table of contents." Tenn. Comp. R. & Regs. 0800-02-21-.16(6) (2015). Moreover, "each of the records shall be identified by author and date and numbered as in the table of contents." *Id*. In addition, the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board direct that "no paper shall be included in the record more than once." *See* Workers' Compensation Appeals Board Practices and Procedures, § 3.3 (2015). The medical records submitted in this case number approximately four hundred pages, do not include a table of contents,

4

are not identified by date and author, are not in chronological order, and contain numerous duplicative records. The submission of the medical records in this case does not comply with applicable rules, making appellate review unnecessarily cumbersome and time-consuming.

*Issues*

The rules governing "Mediation and Hearing Procedures" of the Bureau of Workers' Compensation are intended to "provide for an efficient and expedient resolution of issues within the jurisdiction of the [Bureau]." Tenn. Comp. R. & Regs. 0800-02-21-.01 (2015). To that end, Tennessee Code Annotated section 50-6-239 and applicable rules mandate the use of a Dispute Certification Notice ("DCN"), which identifies the disputed issues raised by either party in a case and provides the trial court notice of the issues submitted for adjudication. *See* Tenn. Comp. R. & Regs. 0800-02-21-.02(10) (2015). Issues not listed on the DCN cannot be submitted for adjudication unless the party seeking inclusion of an unlisted issue satisfies specific statutory criteria as set forth in Tennessee Code Annotated section 50-6-239(b)(2) (2014).

In the present case, the DCN listed six unresolved issues, which were reiterated in the trial court's order. Since Employee did not file an affidavit in support of his Request for Expedited Hearing, the DCN represents the only indication of the issues to be addressed.[2] Moreover, since Employee did not present a position statement or other written argument in support of his position prior to the issuance of the trial court's order, the statements contained in the Petition for Benefit Determination represent the only factual allegations from Employee available for the trial court's consideration. Therefore, the issues to be addressed by the trial court were:

1. Whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer;
2. Whether Employer is obligated to provide a panel of physicians upon notice from Employee of an alleged injury;
3. Whether Employer is obligated to pay for any past medical expenses and/or mileage expenses;
4. Whether Employee is entitled to additional medical care as recommended by a physician;
5. Whether Employee is entitled to any past or future temporary total disability benefits, and if so, in what amount; and

---

[2] Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(a) provides that all motions for expedited hearing must be accompanied by affidavits and any other information demonstrating that the employee is entitled to temporary disability or medical benefits. No objection was made to the case being reviewed by the trial court without a supporting affidavit as required by this rule, and the issue has not been raised on appeal. Accordingly, the issue has been waived and we decline to address it.

6. Whether Employee is entitled to any past or future temporary partial disability benefits, and if so, in what amount.

*Injury Primarily Arising Out of and in the Course and Scope of Employment*

The trial court concluded that Employee "has not presented sufficient evidence to prove he suffered a physical injury at work." In support of this conclusion, the trial court noted the statement in the police report indicating that Employee did not report a physical injury at the scene of the accident. The trial court further noted that the initial emergency room report listed no physical evidence of a head injury and that all diagnostic tests have been negative. Furthermore, with respect to the alleged brain injury and/or mental conditions, the trial court noted documentary evidence of preexisting cognitive difficulties, as well as Dr. Filer's conclusion that his current symptoms are attributable to a non-work-related mood disorder. Employee did not cite any specific records for the trial court's consideration documenting a medical opinion that Employee suffered a physical or mental injury arising primarily out of the work-related accident.

In a Position Statement submitted in support of the Notice of Appeal, Employee correctly states that "several types of injuries can be insidious, manifesting symptoms hours, sometimes days, after an accident." Employee then cites several specific medical reports in the record indicating that Employee had been diagnosed with "cervical and back sprains," an "altered mental state due to the trauma from the accident," and "a concussion." However, none of these reports specifically state that the diagnosed condition arose primarily out of the motor vehicle accident. Moreover, it is unclear what information each of these medical providers reviewed in forming their opinions. The record, as it currently stands, is devoid of an express expert medical opinion supporting Employee's claim that his medical conditions arose primarily from the work-related accident. Under these circumstances, we cannot conclude that the evidence submitted to date preponderates against the determination of the trial court on this issue.

*Entitlement to a Panel of Physicians*

There is nothing in this record, other than the DCN, documenting Employee's allegation that he is entitled to a panel of physicians at this time. To the contrary, the Petition for Benefit Determination indicates that Employee *did* receive a panel of physicians and that he selected Dr. Filer.[3] Since Dr. Filer reached the conclusion that Employee's mental conditions are attributable to a non-work-related condition, it was incumbent on Employee to come forward with sufficient evidence from which the trial court could conclude that he is likely to prevail at a hearing on the merits. As this record

---

[3] As noted above, the medical records indicate that Employee was referred to Dr. Filer by Dr. Lindsay Wilson, not that Dr. Filer was selected from Employer's panel. Employee offered no affidavit, evidence, or other explanation regarding this apparent inconsistency.

6

currently stands, the evidence does not preponderate against the trial court's determination that Employer is not entitled to a panel of physicians at this time.

*Past Medical Expenses*

The record in this case does not adequately document: (1) whether Employee was provided a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204(a)(3); (2) whether Employer paid any medical expenses incurred after the date of the motor vehicle accident; and/or (3) whether any of the North Carolina medical providers were authorized or paid by Employer. It is well-settled that an injured worker has the burden of proof of all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). In the present case, the record is deficient regarding this issue. Although medical bills were included as an exhibit, there is no indication regarding whether any of these providers were authorized and/or whether the charges were reasonable and necessary for treatment of a work injury. Therefore, we cannot conclude that the preponderance of the evidence weighs against the trial court's decision not to order the payment of past medical expenses at this time.

*Entitlement to Additional Medical Care*

It is undisputed that Employee was involved in a work-related motor vehicle accident. Generally, therefore, Employee is eligible to receive reasonable and necessary medical treatment causally-related to the work accident. The resolution of this issue again hinges on a deficient record. The Petition for Benefit Determination indicates that Employee received a panel of physicians. This may or may not be accurate, but the record provides little support one way or the other.[4] The question, therefore, is whether Employee came forward with sufficient evidence to show that he is entitled to medical treatment for a condition or conditions that arose primarily from the work-related accident.

The most recent report from Dr. Filer, dated February 10, 2015, includes the following recommendation: "clinic referral to include pain psychology (due to probable psychogenic overlay – also, I have concern that possible secondary gain will lead him to seek narcotic pain management). . . . I am skeptical that his poor compliance is related to organic memory impairment based on neuropsych testing results)." Dr. Filer also prescribed Zoloft, but did not state whether the use of this medication was related to the work accident. In sum, Employee has not submitted adequate evidence to date to show

---

[4] Affidavits and/or witness testimony could have facilitated resolution of this and other issues in this case.

that he is entitled to medical treatment as a result of a condition which arose primarily from the work accident.

*Entitlement to Temporary Disability Benefits*[5]

To be entitled to temporary total disability benefits, an injured worker "must prove that he [or she] was (1) totally disabled to work by a compensable injury; (2) that there is a causal connection between the injury and his [or her] inability to work; and (3) the duration of that period of disability." *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

The record in this case presents multiple conflicting statements regarding Employee's work status. In the emergency room record dated August 20, 2014, Employee was released to "return to work without restrictions." In a letter dated September 17, 2014, Dr. Wood stated, "[Employee] should remain off work until at least September 30, 2014 when he receives further evaluation by Dr. Filer." In a letter dated November 18, 2104, Dr. Filer stated, "[Employee] should remain out of work until I can review the results of his neurological testing." In a report dated January 20, 2015, Dr. Filer stated, "no specific restrictions are recommended as it relates to his reported head injury." Finally, in his report dated February 10, 2015, Dr. Filer reiterated, "I did not recommend any specific work restrictions related to his work-related injury . . . ."

The difficulty with the various statements quoted above is that even when Employee was taken off work or assigned work restrictions, it is unclear whether the restrictions and/or disability were causally-related to the August 20, 2014 accident. Instead, the record supports a conclusion that Employee was exhibiting symptoms of cognitive dysfunction which led to the work restrictions and/or temporary disability. Since Employee has not come forward with sufficient evidence to support a conclusion that his cognitive dysfunction arose primarily from the work accident, it was not error for the trial court to deny temporary disability benefits at this time.

**Conclusion**

At this interlocutory stage, Employee has not met his burden of establishing entitlement to a panel of physicians, payment of past medical expenses, provision of additional treatment, or payment of temporary disability benefits. Additionally, we find that the trial court's order does not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3) (2015). Therefore, we affirm the decision of the trial court and remand this case for any further proceedings as may be necessary.

---

[5] Issues five and six, as listed in the trial court's order, are treated together due to the similar analysis under the facts of this case.

8

Timothy W. Conner, Judge
Workers' Compensation Appeals Board