FILED

October 9, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 9:27 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

Thomas Seabaugh,                    )    Docket No.:  2015-07-0121
      Employee,                )
v.                                  )
                               )    State File No.: 74769-2014
                               )
Revel Logging,                      )
      Employer,                )    Judge Allen Phillips
                               )
And                                 )
                               )
Forestry Mutual Ins. Co.,           )
      Insurance Carrier.       )
                               )
                               )

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Thomas Seabaugh, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is Mr. Seabaugh's request for further medical evaluation of his alleged left-shoulder injury. The central legal issue is whether Revel has provided, to date, all medical benefits to which Mr. Seabaugh is entitled, or whether he is entitled to further evaluation of his left shoulder. For the reasons set forth below, the Court finds Mr. Seabaugh is entitled to further medical evaluation of his left shoulder by an orthopedic physician.

### History of Claim

Mr. Seabaugh is a sixty-eight year-old resident of Henry County, Tennessee. He drove a log truck for Revel. On September 19, 2014, three log trucks travelling in the opposite direction approached his truck on a highway near Bardwell, Kentucky. The lead truck crossed over the centerline into his lane of travel. He stated that the freshly-paved roadway had no shoulder and the right side wheels of his truck dropped off the road causing him to lose control. The truck turned over onto its right side.

1

Following the accident, Mr. Seabaugh extricated himself from the vehicle. He described the pull of his seat belt as "cutting into" his left-shoulder area and bruising his chest. He was unsure as to whether his left shoulder struck any part of the interior of the cab. Likewise, he was unsure as to whether he specifically complained of his left shoulder at the Jackson Purchase Hospital emergency room, where he arrived by ambulance. He recalled complaining that the entirety of his left side "was hurting." The hospital records include complaints of neck pain and note evaluation of his neck, which included a CT scan. (Ex. 2.)

On September 25, 2014, Revel provided Mr. Seabaugh a panel of physicians that included Dr. John Brophy, a neurosurgeon; Drs. Stephen Waggoner and Kelly Pucek, orthopedic surgeons; and a chiropractor. Mr. Seabaugh chose Dr. Brophy.

Mr. Seabaugh first saw Dr. Brophy on October 22, 2014. Mr. Seabaugh completed an intake form, including a diagram to indicate the anatomic areas where he felt pain. He shaded the rear of the figure over the shoulders, neck, left buttock and right knee. (Ex. 1 at 14.)[1] Dr. Brophy noted the chief complaints as headaches, neck and shoulder pain and leg pain. (Ex. 1 at 9.) He diagnosed "neck pain associated with multilevel cervical spondylosis without definite clinical evidence of radiculopathy or myelopathy." (Ex. 1 at 11.) He recommended an MRI of the cervical spine. *Id.*

Mr. Seabaugh returned to Dr. Brophy on October 29, 2014, for review of the MRI. His "chief complaint [was] neck and upper medial trapezius pain." (Ex. 1 at 17.) The MRI revealed spondylosis at multiple levels of the cervical spine. (Ex. 1 at 18.) Dr. Brophy's diagnoses were unchanged. (Ex. 1 at 19.) Dr. Brophy recommended a work-conditioning program and released Mr. Seabaugh to light duty of no lifting over twenty pounds and no "commercial driving." *Id.*

Mr. Seabaugh completed the work-conditioning program and returned to Dr. Brophy with the same complaints of neck and trapezius pain on November 19, 2014. Dr. Brophy maintained the restrictions and opined Mr. Seabaugh would be released to full duty as of December 10, 2014. (Ex. 1 at 31-32.) Dr. Brophy opined maximum medical improvement and no permanent disability as of December 10, 2014. (Ex. 1 at 33.)

Mr. Seabaugh returned to Dr. Brophy for authorized treatment on March 4, 2015. He reported his right-side pain was "much improved," but that there was no improvement in his left "trapezius and cervical paraspinal muscle pain." (Ex. 1 at 34.) Dr. Brophy maintained Mr. Seabaugh's full-duty status and again noted the diagnoses of cervical and

---

[1] The medical records admitted into evidence bear Bates stamp numbers in the lower right corner of each page. However, the records are largely chronological in their entirety rather than chronologically arranged by provider. The Court will cite the records verbatim by the page numbers as they appear, but reminds the parties of Rule 0800-02-21-.16(6)(c) regarding a table of contents identifying records by author and date.

trapezius muscle pain. (Ex. 1 at 36.)

Mr. Seabaugh returned to Dr. Brophy for a final visit on June 3, 2015. Dr. Brophy recorded that Mr. Seabaugh "[d]uring the three evaluations through this clinic . . . primarily complained of neck, trapezius and interscapular pain. He has not described radicular pain or headaches." (Ex. 1 at 199.) On that date, Mr. Seabaugh complained of neck and left-trapezius pain, left-shoulder pain and diffuse headaches. *Id.* Dr. Brophy noted diagnoses of cervical and trapezius-muscle pain, left-shoulder joint pain and headaches. He stated, under "RECOMMENDATIONS," the following:

> In my opinion, there is no indication for surgical intervention related to his cervical spondylosis. Since his accident was not associated with a loss of consciousness and he has not complained of headaches in the immediate injury period, I offered to set up further evaluation with a brain MRI through his personal insurance, which would also assess his tremor. We also discussed the option of further evaluation of his left shoulder through Orthopedics through his personal insurance.

(Ex. 1 at 200.)

Mr. Seabaugh testified he was unable to perform the duties of his truck driving job because he could neither "throw" the straps that secure logs to the trailer up and over the loads, nor turn the crank that lowers the trailer's support wheels. He maintained his shoulder has hurt since the accident, and that he complained of it, and headaches, to Dr. Brophy from the beginning of treatment forward. He disputed Dr. Brophy's notations that he was engaging in strenuous yard work and stated that Dr. Brophy constantly discussed the institution of a walking program at home for all of his problems. Despite his release to full duty, Mr. Seabaugh does not believe he could perform his former job duties due to his current condition, particularly his shoulder pain. Revel terminated him because of the accident and refused to provide an orthopedic evaluation.

Mr. Seabaugh filed a Petition for Benefit Determination (PBD) seeking further medical evaluation by an orthopedic specialist. The parties did not resolve the disputed issue through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. Seabaugh filed a Request for Expedited Hearing, and this Court heard the matter on September 21, 2015.

At the Expedited Hearing, Mr. Seabaugh asserted he is entitled to further evaluation of his left shoulder by an orthopedic specialist and noted, "it is interesting" that Dr. Brophy recommended an orthopedic evaluation in his last note, but advised that Mr. Seabaugh should seek such evaluation "on his own." Revel countered that there is no evidence of any "contact with the left shoulder in the accident," that it provided Mr. Seabaugh medical treatment through Dr. Brophy, and it is "not sure what else a doctor

3

can do for this." It also noted Dr. Brophy made no specific referral to an orthopedic physician and argued that Mr. Seabaugh is "doctor shopping."

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[2] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the workers' compensation law, an injury must arise "primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014)(in pertinent part). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Mr. Seabaugh need not show his injury arose primarily out of and in the course and scope of employment by a preponderance of the evidence at this stage of the proceedings. Instead, he merely must demonstrate his likelihood of prevailing at a hearing on the merits. The medical evidence in this case to date is limited but, for the standard required at an expedited hearing, the Court finds Mr. Seabaugh has come

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

forward with sufficient information to demonstrate entitlement to orthopedic evaluation of his left shoulder.

In so finding, the Court first notes the provisions of Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) that provide that an employer shall furnish to the employee such medical treatment as is *made reasonably necessary by accident.*" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014)(emphasis added). Further, the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians shall be presumed correct on the issue of causation, but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(13)(E) (2014).

Applying these provisions to the instant case, the Court notes that Mr. Seabaugh reported shoulder pain to Dr. Brophy at the first visit. (Ex. 1 at 9.) The pain diagram completed at that visit indicates shading over the left-shoulder area. (Ex. 1 at 14.) Likewise, Mr. Seabaugh consistently complained of left-trapezius pain throughout his treatment with Dr. Brophy. Thus, the Court finds Mr. Seabaugh's complaints of pain in his left-shoulder area to be consistent throughout his medical treatment.

Mr. Seabaugh's testimony at trial was that he had pain in his shoulder area from the occurrence of the accident to the time of the hearing. The Court finds his complaints credible and consistent with documented areas of pain in Dr. Brophy's records. The Court does question Dr. Brophy's comments at the final visit of June 3, 2015, regarding no prior complaints of headaches. To the contrary, Mr. Seabaugh complained of headaches from the outset, as noted in the records. This inconsistency lends credence to Mr. Seabaugh's testimony that he always complained of his shoulder area and headaches but only received evaluation concentrated on his neck.

Notably absent from Dr. Brophy's records is any opinion as to why Mr. Seabaugh should seek evaluation by an orthopedist "through his personal insurance." (Ex. 1 at 200.) By inference, Revel contends this statement indicates Dr. Brophy's opinion is that the shoulder complaints are not related to his work injury. The Court must respectfully disagree. There is no stated basis for the recommendation that orthopedic evaluation should occur under personal insurance rather than workers' compensation. Thus, there is no causation opinion for Mr. Seabaugh to rebut.

To the contrary, the undisputed facts establish an accident occurred, and that Revel provided Mr. Seabaugh a panel of physicians less than one week later. Of note, the initial panel of physicians contained not only Dr. Brophy but also two orthopedic surgeons, Drs. Pucek and Waggoner, each affiliated with separate orthopedic clinics. (Ex. 5.) The Court finds this indicative that Revel recognized the possibility of an orthopedic problem from the outset. Dr. Brophy does not dispute that Mr. Seabaugh might benefit from an orthopedic evaluation as shown by his describing it as an "option." "The nature and

extent of an employee's injuries, and the issue of medical causation, usually come to light in the course of treatment of the employee's injuries." *Quaker Oats v. Smith*, 574 S.W.2d 45, 48 (Tenn. 1978). Mr. Seabaugh has yet to have an orthopedic evaluation for his shoulder complaints, and the causal relationship of any shoulder injury might be addressed by the provision of such evaluation.

Therefore, as a matter of law, Mr. Seabaugh has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His request for orthopedic evaluation of the left shoulder is granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Revel or Forestry Mutual shall provide Mr. Seabaugh with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Revel or Forestry Mutual providing Mr. Seabaugh with a panel of orthopedic physicians as required by that statute to evaluate Mr. Seabaugh's left shoulder and opine as to any causal relationship between any shoulder condition and the subject accident. In completing this panel, Revel may include physicians from the original panel provided Mr. Seabaugh.

2. This matter is set for a Scheduling Hearing on December 7, 2015, at 9:00 a.m. Central Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 9th day of October, 2015.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

<u>Initial Hearing</u>:

A Scheduling Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the

purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 9th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| **Robert T. Keeton, III** | | | X | **keetonlawoffices@keetonlaw.net** |
| **Jeffery G. Foster** | | | X | **jfoster@morganakins.com** |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

8

## APPENDIX

Exhibits:
1. Medical Records of Dr. John Brophy
2. Medical Records of Jackson Purchase Regional Hospital
3. Medical Records of Ortho Works Therapy
4. Affidavit of Mr. Seabaugh
5. Choice of Physician Form (C-42)

Technical Record:[3]
1. Petition for Benefit Determination, June 29, 2015
2. Dispute Certification Notice, August 7, 2015
3. Request for Expedited Hearing, August 12, 2015

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.