COMMONWEALTH OF KENTUCKY TRANSPORTATION CABINET DEPARTMENT OF VEHICLE REGULATION, Appellant,

v.

Jessie D. ROSS, Appellee.

No. 93–CA–000505–MR.

Court of Appeals of Kentucky.

July 29, 1994.

Rehearing Denied Oct. 7, 1994.

---

J. Patrick Kilgore, Reynolds, Catron, Johnson & Hinton, Bowling Green, for appellant.

Jessie D. Ross, Paducah, for appellee.

---

Before LESTER, C.J., and COMBS and JOHNSON, JJ.

*OPINION*

LESTER, Chief Judge.

This is an appeal from a judgment entered upon findings of fact and conclusions of law reversing an order of appellant suspending appellee's license to operate a motor vehicle for failure to submit to a chemical test as required by KRS 186.565.

Needless to say, Jessie Ross was arrested by the Paducah police for driving while under the influence of intoxicants. Officer Timothy Melton initially stopped Ross for speeding and during the course of the pursuit, he, the policeman, observed nothing to indicate erratic driving but did smell alcohol when he approached appellee. Although the officer filed a sworn affidavit that he gave Ross three field sobriety tests, which he swore were failed, he testified at the administrative hearing that he administered but two. Upon arrival at the police station, the actors had to wait for an officer Watson to come on duty as Melton was not certified to give the breathalyzer test. When Watson arrived there were at least four people present, namely, the accused, the arresting officer, Watson and a police captain who was a supervisor. As to the administration of the test, Melton testified:

> And I know he [Ross] attempted to blow and I think—Officer Watson told him, he said you know, you (sic) not getting enough air, you're going to have to blow, and he said he couldn't.
>
> Yes.
>
> And so he give (sic) him a couple of chances, and that was it.
>
> Yeah.
>
> Yes. Officer Melton, let me ask you this. Did you ever hear Officer Watson say oh, you're going to lose your license for six months if you don't take this test?
>
> On the card, I think it says that—we have, you have to read it. It says that you may lose your license for six months if you don't—.
>
> Yes.
>
> If you don't (inaudible).

But you never heard Officer Watson say that?

No, sir. Un uh.

Officer Melton's version is that appellee attempted to take the test but that he was unable to blow into the machine and that he did not hear Watson warn Ross of the legal consequences for refusal.

Officer Watson, for some unexplained reason, did not testify at the hearing, but we now look to the crucial part of his affidavit from which the hearing officer recited in part:

> As a law enforcement officer acting on behalf of the Paducah Police agency, I did request the defendant to submit to a test of his or her breath to determine the alcoholic content of, content of their blood. Upon, upon, (sic) upon (sic) making this request the defendant refused to submit to the test. Therefore, pursuant to KRS 186.565(3), I warned the defendant of the effect of his refusal and again requested that he submit to the test. The defendant again refused.

Officer Watson states unequivocally that Ross refused twice to take the test and that he did warn him pursuant to the statute.

We now turn to the evidence of the appellee concerning the test:

> But they in—, said you need to take it and I went out there and I was taking it. I thought I was taking it right. Cause I got bad adenoids, and been operated on for my sinuses before.
>
> Tell Hearing Officer Nall about that now. You—when you talk about adenoids and sinuses.
>
> Well, I breathe real shallow. I can't breathe real deep.
>
> Yes, sir. Well what happened during the test?
>
> I took it out to take a deep breath and he just got aggravated I guess.
>
> You have the—?
>
> I think he was aggravated because he had to start work early.
>
> Did you get that impression.

I didn't know—I thought he got aggravated cause he had to come over there in the first place.

Yes, sir.

I didn't know—in my mind, I thought any officer that stopped you could give you a test, but my understanding now they have to have someone else to do that.

Yes, sir. Okay.

But—and I thought he, well he's got aggravated cause he had to come and do this. Okay.

But evidently, by the officer's statement, he had to start to work early, and if he didn't get paid for it I'd probably been agg—, upset myself.

Did—did Officer Watson say oh, you've got to take this test? And did you say I'm not going to take it?

No.

Okay. Tell Hearing Officer Nall what were the circumstances when the test was over and you were declared—?

Well, I was taking it and blowing in it, and he said—.

You had the—you had the apparatus in your mouth?

Right. I had it in my mouth and I was blowing, I was blowing on the apparatus, the little tube, and—.

Yes, sir.

And he said you're not blowing it right, you're not putting enough air in it. So I took, took it out of my mouth, turned my head like that, and he's just like, he said he's refusing, lock him up. And that's exactly what he said.

Okay. Was there any mention about, oh sir, if you don't take this test you could lose your license for six months?

I was never, never verbally gave (sic) any instructions about any law.

Thus, we have Officer Melton testifying that Ross attempted to blow into the apparatus which is supported in greater detail by the appellee. In addition, the policeman heard no statutory warnings given the accused and Ross said they were not mentioned. We also note the supervising police captain did not appear at the hearing.

In her report and recommendation to the Secretary of Transportation, the hearing officer appeared to have relied solely upon the form affidavit in concluding that the substantial evidence test had been met. Moreover, the hearing officer cited *Newman v. Stinson*, Ky., 489 S.W.2d 826 (1972), to support the legal conclusion that "[s]ubmission to the test requires a sample sufficient for an analysis to be made or the test has been refused and license may be revoked." What this overlooks is Commissioner Vance's statement about "impossibility of compliance" which is demonstrated herein by Ross' inability to breath deeply, so Newman is not supportive of the hearing officer's conclusion.

Based upon the record the circuit court reversed the appellant's determination and in so doing it did not omit mention of the affidavit but did find, in part:

> Jessie D. Ross was acquitted of the DUI charge on 21 February 1991 in a bench trial before District Judge Jeffrey Hines.
>
> This Court concludes that the only issue before the Court is whether or not the Secretary's ruling against Petitioner Jessie D. Ross is supported by substantial evidence, and whether the actions of the Secretary is arbitrary and capricious. KRS 186.565(5).
>
> Because the Secretary embraced the proof submitted in the form affidavit presented because of Officer Watson's absence, and ignored the sworn testimony of Officer Melton and Petitioner Jessie D. Ross, this Court concludes that the Secretary's ruling against Petitioner Jessie D. Ross is not supported by substantial evidence, and the Secretary's action recommending revocation of Mr. Ross' license is therefore arbitrary and capricious.
>
> This Court concludes that Petitioner Jessie D. Ross was not given the warnings required under KRS 186.565(3).

To this Court the appellant argues the familiar principles of *American Beauty Homes Corp. v. Louisville and Jefferson County Planning & Zoning Commission*, Ky., 379 S.W.2d 450 (1964) and *Commonwealth of Kentucky, Transportation Cabinet, Department of Vehicle Regulation v. Cornell*,

Ky.App., 796 S.W.2d 591 (1990), as to the duties of a reviewing court and whether evidence is sufficiently substantial. With these we do not disagree, but substantial evidence has been defined as being that of substance and relative consequence, *O'Nan v. Ecklar Moore Express, Inc.,* Ky., 339 S.W.2d 466 (1960), and the test of that substantiality is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men. *Kentucky State Racing Commission v. Fuller,* Ky., 481 S.W.2d 298 (1972). We do not believe, as did the circuit court, that the affidavit of the absent witness had either the substance or relative consequence upon which to revoke appellee's license, for when it is considered in light of all the evidence it had insufficient probative value to induce conviction. Accordingly, the revocation was arbitrary and capricious.

Recalling that Ross was acquitted of the charge of driving while under the influence, we think it only fair to direct attention to a matter which concerns this Court. The chemical test provided for in KRS 18A.103 can only be utilized if one is arrested for a violation of KRS 189A.010(1) or KRS 189.-520(1). The arrest is followed by a charge, but a charge, like an indictment, is not a conviction. If the accused refuses to take the test and is later found to be not guilty, then there was no violation of KRS 189A.010(1) or KRS 189.520(1). This being true, then is the administrative agency within its rights to proceed with a revocation hearing when there was no violation of the DUI statutes which forms the basis for taking the test in the first place? Moreover, is there an infringement by the executive branch of government upon the functions of the judicial? These issues were not raised in this appeal, but we foresee the time when we will have to resolve them.

The judgment is affirmed.

All concur.