IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2001 Session

## THELIA BARRETT v. WHITE HOUSE UTILITY DISTRICT OF ROBERTSON AND SUMNER COUNTIES

**A Direct Appeal from the Circuit Court of Wilson County**
**No. 11046    The Honorable John D. Wootten, Jr., Judge**

_____

No. M2000-02426-COA-R3-CV - Filed November 15, 2001

_____

This appeal challenges an award of damages made to the plaintiff by the trial judge after a bench trial.  Defendant claims the trial judge's finding of causation is contrary to the weight of the evidence, that the damages are excessive and that it was error to award discretionary costs.  Plaintiff claims that the award was inadequate.  We affirm the trial court in all respects.

**Tenn. R. App. P. 3; Appeal as of Right: Judgment of the Circuit Court is affirmed**

JOHN A. TURNBULL, Sp. J., delivered the opinion of the court in which BEN H. CANTRELL, J. and WILLIAM BRYAN CAIN, J., joined.

Bridgett A. Wohlpart, Brentwood, for Appellant, White House Utility District of Robertson and Sumner Counties.

Hugh Green, Lebanon, for Appellee, Thelia Barrett

### OPINION
#### I.  Facts

This governmental tort liability case arises out of a rear-end collision which occurred on December 3, 1998, on the square in Lebanon, Wilson County, Tennessee.  Plaintiff, age 74, was riding as a passenger in her daughter's car when it was struck from the rear by a truck driven by defendant's employee, Scott Armstrong.  Armstrong admitted the collision was caused by his inattentiveness, and fault was stipulated at trial.  The defendant did, however, contest vigorously at trial the issue of whether plaintiff suffered injury as a result of the collision, and the nature and extent of any injury suffered.  Plaintiff was, in fact, on the way to her family physician for a scheduled

appointment at the time of the collision. She had undergone left hip replacement surgery in June 1998. In addition, the evidence indicated plaintiff had numerous pre-existing conditions, including osteoporosis, degenerative changes in the spine, spinal stenosis, spondylolisthesis, and compression fractures of the T-7, T-11 and L-5 vertebrae. After her left hip replacement in June, 1998, plaintiff, according to her own testimony, and that of her two lay witnesses, improved substantially. In the three months prior to the December 3, 1998, collision, plaintiff walked normally, got up and down without a problem, did her own shopping, watered her flowers, walked to her mailbox, and picked up trash around her yard. She enjoyed quilting, sewing and cooking meals for her son, Earl, and other family members. She did not need the assistance of a walker, and the arthritic pain she suffered was eased by Tylenol.

At the time of the collision, which apparently caused no visible damage to the vehicles involved, plaintiff felt a jarring sensation and thought her hip had been knocked out of place. She went on to her scheduled appointment with her family physician, Dr. Jantz, who did not testify at trial. Four days later, plaintiff was seen by Dr. Terry, an orthopedic surgeon and partner of Dr. Stephen Neely, who had treated plaintiff for several years, and had performed her left hip replacement surgery. Dr. Terry noted a fracture of L-1 vertebra which had not been present on previous films. Dr. Neely has conducted the follow up treatment.

Dr. Neely was the only medical expert to testify at trial. He testified that x-rays after the collision showed "a marked compression of L-1" which, in his opinion, was "new and related to the trauma, the accident." He described the L-1 fracture as a "60-70% compression fracture." Plaintiff has continued to complain of terrible back pain which Dr. Neely attributed to the fracture of L-1 and trauma of the collision. Dr. Neely conceded that the pre-existing osteoporosis suffered by plaintiff weakened her bones. In Dr. Neely's opinion, "she was pre-disposed to compression fractures and had previously sustained a compression fracture, but this compression fracture (60-70% compression fracture of L-1) was secondary to her accident." In Dr. Neely's opinion, trauma necessary to produce a fracture in a person suffering from osteoporosis "is less than that in a person not afflicted with that condition."

Dr. Neely presented his testimony as a well qualified board-certified surgeon, a graduate of the University of Virginia undergraduate and medical schools who completed an internship and residency in general surgery at that university before completing an orthopaedic research fellowship and residency at Harvard and Massachusetts General Hospital. He has practiced orthopaedic surgery in Lebanon since 1980. At trial, Dr. Neely was rigidly and vigorously cross-examined by defense counsel, but was unflinching and unwavering in his opinion that the L-1 fracture and subsequent pain and the 10% impairment were caused by the trauma of the collision. The defendant failed to present any expert medical opinion to the contrary. Instead, defendant chose to attack Dr. Neely's causation opinion as speculative and questioned how Dr. Neely could possibly relate the L-1 compression fracture to this minor impact collision.

2

The plaintiff's testimony and Dr. Neely's opinion that the collision had a life changing impact on plaintiff were supported by the lay testimony of her son, Earl Barrett, and Lucille Maynard, her next door neighbor. Mrs. Barrett now uses a walker "everyday" "all the time" even to go to the front door to talk to Mrs. Maynard. "It's been almost a year and a half and she still can't get around." She can no longer water her flowers or do many of the things she enjoyed prior to the collision. The plaintiff, who was in "good spirits" after recovering from her hip replacement, is now "miserable" "inactive" and "more down now." Neither of the lay witnesses was impeached nor cross-examined by defense counsel.

The learned trial judge made a specific finding that the plaintiff and her two lay witnesses were "very believable and very credible witnesses." In addition, the court found that Dr. Neely, the only expert who testified, was "unshakable in his conclusion" and "unflinching in his opinion" that the injuries sustained by the plaintiff were caused by the collision. The trial court found that plaintiff had carried her burden of proof on causation. After noting the parties had stipulated the reasonableness and necessity of medical expenses in the amount of $6,369.29, the court set pain and suffering and loss of enjoyment of life damages at $30,000.00 considering plaintiff's average life expectancy of 10.26 years. The verdict of $36,369.29 is challenged by the defendant as excessive and by the plaintiff as inadequate. In addition, defendant insists the finding of causation is contrary to the weight of the evidence.

## II.
### Sufficiency of Proof on Causation

Defendant firmly believes that the low impact collision did not cause the severe compression fracture of the L-1 vertebrae. Counsel argues that plaintiff had, prior to the collision, complained of low back pain due to her degenerative disc disease, spinal stenosis, and compression fractures, and that Dr. Neely's testimony as to causation amounts to mere speculation. These arguments are not supported by the evidence or by the law. Indeed, we review the findings of fact by the trial court *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Cross v. City of Memphis*, 20 SW 3d 642 (Tenn. 2000). Thus, our attention is drawn away from the defendant's beliefs and arguments and toward the evidence at trial and its preponderance. The findings of the trial court which depend on the credibility of witnesses who testified live are to be afforded great deference. *Clarendon v. Baptist Memorial Hospital*, 796 SW 2d 685 (Tenn. 1990). With respect to deposition testimony of a doctor, this court may draw its own conclusions. We cannot, however, read and evaluate the deposition testimony of experts in a vacuum. Such testimony must be considered in conjunction with lay testimony regarding the effects of the injury. The trial court has the opportunity to view the deposition medical testimony regarding causation and permanency through the prism of its view of the credibility of lay witnesses. See *Thomas v. Aetna Life and Casualty Co.*, 812 SW 2d 278 (Tenn. 1991). The deposition testimony of a doctor that a patient cannot perform certain

activities can be rendered unbelievable by believable lay testimony that those same activities are being performed by the patient without apparent difficulty. Likewise, when credible lay testimony is given that an incident has a significant impact on a person's life supports a medical opinion of causation the believability of the medical opinion is strengthened. Thus, whether a medical opinion is accepted or rejected is often dependent upon whether lay witness testimony is accepted or rejected. The trial court is simply in a better position than the appellate court to judge the credibility of such oral testimony. See *Harwell v. Harwell*, 612 SW 2d 182 (Tenn. Ct. App. 1980).

The trial judge heard the testimony of Mrs. Barrett, Earl Barrett, and Lucille Maynard, and observed the demeanor of each of these witnesses. Each witness was judged to be a "very believable and very credible witness." They each described significant changes in plaintiff's activities since the accident. Before the collision, Mrs. Barrett is described as active, getting around real good, pretty happy, and in good spirits. Since the collision, she is described as inactive, dependent upon a walker for mobility, and miserable. She no longer visits her neighbor's home, nor does she water her own flowers, or putter around in her yard. This testimony lends support to the deposition medical testimony of Dr. Neely that the severe compression fracture of L-1 was caused by the collision, and is the source of the "terrible pain" Mrs. Barrett is suffering. The finding of the trial judge that the plaintiff carried her burden of proof on causation is amply supported by the preponderance of the evidence.

### III.
### Excessive or Inadequate Award of Damages

Our conclusion that the trial court's judgment of causation is supported by a preponderance of the evidence essentially emasculates defendant's argument that the award of $36,369.29 in damages is excessive. An award of $30,000.00 for pain and suffering and loss of enjoyment of life over Mrs. Barrett's average life expectancy of 10.26 years is certainly not excessive. The fact that Mrs. Barrett suffered from significant pre-existing back problems does not allow the defendant a free shot. Instead, damages must include all the additional harm or disability caused by the collision even though it is greater because of the pre-existing condition and even if a normally healthy person would not have suffered substantial injury. See *Haws v. Bullock*, 592 SW2d 588 (Tenn. Ct. App. 1979); T.P.I. 3 - Civil 14.14.

Neither can we conclude that the award is inadequate. We must presume the correctness of the amount of the award in a non-jury case, and it is only when the evidence preponderates against the amount of the award that we can alter or adjust the amount. T.R.C.P. 13(d). There is no precise mathematical formula by which to calculate intangible damages such as pain and suffering and loss of enjoyment of life, but instead the amount such damages are left to the sound discretion of the trier

of fact.  See *Overstreet v. Shoney's Inc.*, 4 SW 3d 694, 703 (Tenn. Ct. App. 1999) .  While the amount of the award in this case may be modest, we cannot say the evidence preponderates against the amount, or that the trial judge abused his discretion in fixing that amount.

The judgment of the trial court is affirmed in all respects.

_____
John A. Turnbull, Sp. Judge

5