

**FILED**
**Feb 01, 2019**
**09:16 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Kenneth Daron,** | ) | **Docket No.: 2017-06-1981** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 31117-2017** |
| | ) | |
| **Hickman County Government** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **TN Risk Management Trust** | ) | |
| **Self-Insured Pool.** | ) | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court for an Expedited Hearing on January 17, 2019. The issue is whether the right-knee injury Mr. Daron sustained entitles him to treatment as recommended by Christopher Stark, M.D., an unauthorized physician. The Court holds that Mr. Daron is likely to establish that Hickman County is required to pay for Dr. Stark's recommended treatment.

### History of Claim

On May 1, 2017, Mr. Daron injured his right knee when he "mis-stepped" while going up steps to a home where he was quieting a domestic dispute in his capacity as a patrol officer for the Hickman County Sheriff's Department. Mr. Daron testified that he never experienced problems with his right knee or sought medical treatment for it before his accident. Hickman County provided a panel of physicians from which he chose orthopedist Philip Karpos for treatment.

Dr. Karpos noted Mr. Daron was sixty-three and morbidly obese. He ordered x-rays that revealed right-knee arthritis. He diagnosed an aggravation of pre-existing arthritis and/or a medial meniscal tear. Mr. Daron initially responded to conservative care, but his symptoms recurred in September. He returned to Dr. Karpos, who ordered

1

an MRI. It revealed a meniscal tear as well as areas of full thickness chondral loss evidencing advanced arthritis.

On October 11, Dr. Karpos informed Mr. Daron that he did not believe his arthritis was work-related. Further, he could not say whether the meniscus tear was work-related, due to Mr. Daron's advanced arthritis. Because of the arthritis, he did not believe that arthroscopic debridement of the meniscus would be helpful, and he told Mr. Daron that he might require a knee replacement in the future. He gave him an injection to ease the symptoms and indicated he would likely require intermittent injections. He also recommended Mr. Daron lose weight. This was Mr. Daron's last visit to Dr. Karpos.

On January 30, 2018, Mr. Daron sought an opinion with orthopedist Chris Stark. He testified he did so because Hickman County denied his claim upon receiving Dr. Karpos' report. Based on Mr. Daron's history that he had "absolutely no pain" in his right knee before the incident, Dr. Stark believed he sustained a meniscal and chondral injury on May 1, and that "greater than 50% of his symptoms" were related to this work injury. Dr. Stark recommended a partial knee replacement rather than a meniscectomy.

The parties took the depositions of Drs. Karpos and Stark. On direct examination, Dr. Karpos testified that it was impossible to say whether Mr. Daron's work-related injury caused his meniscal tear based on x-rays and MRI results alone. However, given that Mr. Daron did not complain of knee pain before the incident, "one can reasonably make the case" that it might have been related to his work injury. Regardless, he believed that a meniscectomy would not relieve Mr. Daron's symptoms in light of the extensive degenerative changes in the knee.

On cross, Dr. Karpos testified that he could not say whether Mr. Daron's work injury caused a "progression" of his degenerative knee condition. When questioned further, he agreed that the work accident described by Mr. Daron "could cause" meniscal tearing and that it "certainly could have been" a primary cause of an aggravation to the right-knee degenerative process. He also agreed that, without the accident, he "would not be sitting here today talking about a potential total knee replacement." However, he stated that, even if the accident had not occurred, Mr. Daron would have eventually suffered from knee pain given the arthritis' severity.

He also maintained that a partial knee replacement would be "doomed to fail" because of Mr. Daron's activity level and obesity as well as the extent of his arthritic condition. If conservative treatment failed, his recommendation would be a total knee replacement, although Mr. Daron would have to lose weight before the surgery.

In his deposition, Dr. Stark testified that, to his knowledge, Mr. Daron did not have a history of right-knee problems before his "significant" work injury. The MRI

2

revealed osteoarthritis, a medial meniscus tear, and an acute chondral injury to the medial femoral condyle. The chondral injury was evidenced by significant swelling on the bone near the cartilage defect, which was consistent with a traumatic injury. He stated that the MRI results were consistent with the traumatic injury described by Mr. Daron. When asked whether Mr. Daron's knee injury was more likely than not primarily related to his work accident, Dr. Stark agreed that, based on his history and diagnostic film, the condition appears to be related to accident.

As for treatment, Dr. Stark indicated that a partial knee replacement would be best, given that Mr. Daron underwent conservative treatment without significant improvement. However, he conceded that a total knee replacement would also be a viable option. On cross, he admitted that he presumed Mr. Daron had some pre-existing arthritis, but he could not say how much, since there was no diagnostic film before the injury. Nevertheless, the bone swelling around the femoral condyle defect was consistent with a "direct blow" as Mr. Daron described.

## Findings of Fact and Conclusions of Law

Mr. Daron need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Court must first address which doctor is the authorized treating physician, since the "treating" doctor's opinion on causation is presumed correct unless rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). This section states that the presumption of correctness as to causation shall be attributed to the opinion of the doctor "selected by the employee from the employer's designated panel of physicians[.]" Here, that doctor was unquestionably Dr. Karpos, whether or not Hickman County later denied Mr. Daron's claim. Thus, Mr. Daron must rebut Dr. Karpos' causation opinion by a preponderance of the evidence.

In assessing causation, Dr. Karpos said that he could not state within a reasonable degree of medical certainty that Mr. Daron's accident caused his meniscal tear, although since he was asymptomatic before, "one can reasonably make the case" for causation. Likewise, while he felt that the accident did not cause Mr. Daron's arthritis, Dr. Karpos believed that it "certainly could have been" a primary cause of an aggravation of the knee's degenerative condition. Further, the reason why Mr. Daron possibly required surgical intervention at this time was due to the accident making his condition symptomatic.

3

On the other hand, Dr. Stark's testimony and medical records establish that he believed, due to Mr. Daron's pre-accident lack of symptoms, that his current problems were more than fifty percent related to his accident. In addition, this opinion was bolstered by the fact that the MRI showed bone swelling around the femoral condyle, which was consistent with an acute, traumatic injury like the one described by Mr. Daron.

Thus, Dr. Karpos never testified that Mr. Daron's meniscal tear and aggravation of his arthritic symptoms were not work-related. He testified that they could be, but he could not state they were within a reasonable degree of medical certainty. Dr. Stark gave his opinion that Mr. Daron's current knee conditions were more than fifty percent related to his accident, and he justified his opinion by Mr. Daron's lack of pre-accident symptoms as well as the MRI that corroborated an acute injury.

This case is very similar to *Vercek v. YRC, Inc.*, 2017 TN Wrk Comp. App. Bd. LEXIS 39, at *7 (June 6, 2017), although the injury compounding the degenerative condition was to the shoulder as opposed to the knee. In *Vercek*, the treating physician could not say that the accident caused the degenerative condition, but he did state that it exacerbated the shoulder's pathology and the employee's symptoms, previously silent, were the result of the work-injury. Thus, he recommended a shoulder replacement. The Appeals Board held that the doctor's testimony, when considered as a whole, demonstrated that the employee suffered a "compensable aggravation of a pre-existing condition" that created the need for a shoulder replacement. *Id.* at *9.

Here, the Court holds that Dr. Stark's opinion, in its totality, is sufficient to overcome any presumption attached to Dr. Karpos' opinion that Mr. Daron's work injury "possibly" caused and/or exacerbated Mr. Daron's knee condition. Further, the Court finds that he is likely to prove at trial that he suffered a "compensable aggravation of a pre-existing condition" due to his work injury.

The next question is whether Dr. Karpos or Dr. Stark should be authorized to treat the injury. No one disputed that Mr. Daron sought treatment with Dr. Stark without Hickman County's consent. However, he testified he did so only after Hickman County denied his claim following its receipt of Dr. Karpos' causation opinion. Hickman County did not produce any evidence to the contrary. Indeed, at the hearing, Hickman County continued to deny it had a responsibility to provide treatment for Mr. Daron's meniscal tear or arthritis.

Whether an employee is justified in obtaining unauthorized medical treatment and then requiring reimbursement for the cost of this treatment depends upon the circumstances. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). Here, the Court finds that the circumstances justified Mr. Daron's unauthorized treatment with Dr. Stark. Since Dr. Stark firmly established a

4

doctor/patient relationship with Mr. Daron, the Court holds that he is authorized to provide reasonable and necessary treatment for his right-knee injury, including the meniscal tear and the aggravation of his pre-existing arthritic condition.[1]

Both Dr. Stark and Dr. Karpos testified that knee replacement surgery, whether partial or total, was a reasonable option for treating Mr. Daron's knee condition. As the treating physician, the law presumes the care recommended by Dr. Stark is reasonable and necessary, and the employer is obligated to provide it. Tenn. Code Ann. § 50-6-204(a)(1)(H); *see also Clarendon v. Baptist Mem'l Hosp.,* 796 S.W.2d 685, 691 (Tenn. 1990). Thus, the Court holds that Hickman County shall be obligated to pay for treatment recommended by Dr. Stark.

**IT IS, THEREFORE, ORDERED** as follows:

1. Hickman County shall pay for treatment recommended by Dr. Stark for Mr. Daron's work injury, including but not limited to a partial knee replacement.

2. This matter is set for a Scheduling Hearing/Status Conference on March 29, 2019, at 2:00 p.m. C.T. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate. Failure to call in may result in a determination of the issues without your further participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED FEBRUARY 1, 2019.**

**Robert V. Durham, Judge**

---

[1] While Mr. Daron established by deposition testimony that the treatment Dr. Stark already provided was reasonable and necessary for the work injury, he did not introduce the expenses into evidence. Thus, the Court denies reimbursement for these expenses at this time.

# APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Witness and Exhibit List
5. Employer's Expedited Hearing Brief
6. Employee's Expedited Hearing Brief

Exhibits

1. Notice of Filing Medical Records
2. Dr. Stark's deposition
3. Dr. Karpos' deposition
4. First Report of Injury
5. Accident Report
6. Second Accident Report
7. Choice of Physician Form

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on February 1, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Julie Reasonover | | | X | Julie@reasonoverlaw.com |
| Teri Bernal | | | X | tbernal@chartwelllaw.com mwhite@chartwelllaw.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name:_____ SF#:_____ DOI:_____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address:_____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#:_____

Attorney's Address:_____ Phone:_____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]    _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries          $ _____ per month    Telephone       $ _____ per month

Electricity        $ _____ per month    School Supplies $ _____ per month

Water              $ _____ per month    Clothing        $ _____ per month

Gas                $ _____ per month    Child Care      $ _____ per month

Transportation     $ _____ per month    Child Support   $ _____ per month

Car                $ _____ per month

Other              $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct.  $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

Amount Owed                          To Whom

_____           _____

_____           _____

_____           _____

_____           _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____ , 20 _____ .

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                          RDA 11082